# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

STATE OF LOUISIANA, et al.,

Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF EDUCATION, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Louisiana

## EMERGENCY MOTION UNDER CIRCUIT RULE 27.3
## FOR A PARTIAL STAY PENDING APPEAL

*Of Counsel:*

LISA BROWN
  *General Counsel*
  *U.S. Department of Education*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

MELISSA N. PATTERSON
STEPHANIE R. MARCUS
JACK STARCHER
STEVEN A. MYERS
DAVID L. PETERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required under Fifth Circuit Rule 28.2.1 as appellants are all governmental parties.

*s/Jack Starcher*

Jack Starcher

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ..............................................................................1

STATEMENT .........................................................................................................3

    A.    Title IX and The Final Rule ...........................................................3

    B.    Prior Proceedings...........................................................................6

ARGUMENT ..........................................................................................................9

I.    The Department is likely to succeed in showing that the district court's
preliminary injunction is overbroad..................................................... 10

    A.    The district court erred in enjoining provisions of the Rule not
challenged by plaintiffs.................................................................10

    B.    Even as to the challenged provisions, the district court's
injunction is overbroad. ...............................................................13

        1.    Plaintiffs are not entitled to an injunction against § 106.10's
basic prohibition on gender-identity discrimination......................14

        2.    The injunction is overbroad in enjoining § 106.2 in all
respects. ...............................................................................19

II.    The remaining factors favor a partial stay........................................... 20

CONCLUSION ..................................................................................... 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION AND SUMMARY

Title IX prohibits sex discrimination in federally funded education programs and activities. As the Supreme Court has made clear, "Congress gave the statute a broad reach" to cover a "wide range of intentional unequal treatment." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). Congress also tasked the Department of Education with issuing rules to effectuate the statute's broad prohibition on sex discrimination.

Pursuant to that delegated authority, the Department promulgated a rule in April 2024 making a variety of amendments to Title IX's regulations. *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024). Those amendments do many things, ranging from revising record-keeping requirements to guaranteeing access to lactation spaces to breastfeeding students. Plaintiffs do not challenge the vast majority of those changes.

Instead, plaintiffs' request for a preliminary injunction challenged provisions relating to the Rule's application of Title IX's prohibition against sex discrimination to transgender individuals. Even then, the allegations of harm underpinning plaintiffs' claims concern only the application of two discrete provisions—34 C.F.R. § 106.31(a)(2) and the definition of "hostile environment harassment" within 34 C.F.R. § 106.2—to particular contexts, primarily focusing on ways in which recipients may differentiate students based on sex, such as by providing sex-separate bathrooms and using gendered pronouns. Importantly, no plaintiff establishes any harm stemming

from the Rule's basic antidiscrimination requirement in 34 C.F.R. § 106.10, which

precludes recipients from denying students educational opportunities "simply for

being … transgender." *Bostock v. Clayton County*, 590 U.S. 644, 651-52 (2020).

The district court nonetheless preliminarily enjoined enforcement of the entire

Rule within the plaintiff States, without even considering the Department's express

determination that provisions of the Rule could operate independently and the

severability provisions within the Rule itself. The court's sweeping injunction—

extending far beyond the challenged provisions that cause plaintiffs' putative harms—

contravenes bedrock principles requiring that equitable relief be "tailored to redress

the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). The court

plainly erred in enjoining the provisions of the Rule that plaintiffs do not argue are

unlawful. The court also erred in enjoining the challenged provisions in a manner

reaching far beyond any correlation with plaintiffs' claims of harm.

On appeal, the Department will show that the court's injunction cannot be

squared with Title IX's plain text and Supreme Court precedent. In this interim

posture, however, the Department seeks only narrower relief to vindicate core,

equitable limitations on the scope of injunctive relief, asking that this Court stay the

injunction to the extent it sweeps broader than necessary to "redress the plaintiff[s']

particular injur[ies]" asserted here, *Gill*, 585 U.S. at 73—that is, to the extent it extends

beyond the following 2024 Rule's provisions: (i) 34 C.F.R. § 106.31(a)(2), and (ii) 34

C.F.R. § 106.2's definition of "hostile environment harassment" as applied to discrimination on the basis of gender identity.

The Department is likely to succeed in showing the injunction is overbroad. And absent a partial stay, the district court's sweeping injunction will irreparably harm the Department's interest in stamping out sex discrimination and the public interest in ensuring that educational programs and activities are free from such discrimination. In contrast, plaintiffs will suffer no harm from the Department's requested stay.

The Rule's effective date is August 1. The Department respectfully requests a decision on this request by July 12 to allow the Solicitor General to decide whether to seek relief from the Supreme Court—and to allow the Court to consider any such request—if this Court denies relief.[1]

## STATEMENT

### A.    Title IX and The Final Rule

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Congress gave the statute['s]" prohibition on sex discrimination "a broad reach" subject only to a "list of narrow" statutory exclusions. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 175 (2005); *see* 20 U.S.C.

---

[1] Defendants filed a motion seeking identical relief from the district court on June 24. We will notify this Court if the district court acts on that motion.

§§ 1681(a), 1686. Congress also authorized the Department to "issu[e] rules, regulations, or orders of general applicability" to "achieve[] the objectives of the statute." 20 U.S.C. § 1682. And Congress established a detailed administrative scheme authorizing the Department to suspend or terminate federal financial assistance, or secure compliance by "any other means authorized by law," if it cannot secure voluntary compliance through informal means. *See id.* §§ 1234g(a), 1682-1683; *see also* 34 C.F.R. §§ 100.7(a)-(d), 100.8(a).

Since Title IX's enactment, the Department has regularly exercised its authority to promulgate regulations implementing the statute's prohibition on sex discrimination. It did so again in promulgating the Rule, 89 Fed. Reg. at 33,759, which makes a variety of changes to its current Title IX regulations, *id.* at 33,882-96. Among other things, the Rule streamlines administrative requirements related to the appointment and responsibilities of Title IX coordinators, *id.* at 33,885 (to be codified at 34 C.F.R. § 106.8(a)); revises recipients' notice of nondiscrimination and record-keeping requirements, *id.* at 33,885-86 (to be codified at 34 C.F.R. § 106.8(c), (f)); ensures access to lactation spaces for breastfeeding students, *id.* at 33,888 (to be codified at 34 C.F.R. § 106.40(b)(3)(v)); addresses a recipient's response to sex discrimination, *id.* at 33,888-91 (to be codified at 34 C.F.R. § 106.44); and provides additional flexibility in the development and implementation of procedures to respond to claims of sex discrimination, including sex-based harassment, *id.* at 33,888-95 (to be codified at 34 C.F.R. §§ 106.45-106.46).

This litigation concerns other provisions of the Rule. Section 106.10 delineates the scope of prohibited sex discrimination under Title IX. It provides that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. at 33,886. As the Department explained, "discrimination on each of those bases is sex discrimination because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female.'" *Id.* at 33,802 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 655 (2020)).

Separately, § 106.31(a)(2) details when otherwise permissible separation or differentiation on the basis of sex constitutes prohibited sex discrimination. It sets out the general principle that Title IX permits "different treatment or separation on the basis of sex" only to the extent that such differential treatment does not "discriminate[] ... by subjecting a person to more than de minimis harm." 89 Fed. Reg. at 33,887. The final sentence of § 106.31(a)(2) concerns a specific application of that principle, providing that a policy or practice that "prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex." *Id.* This provision also recognizes, however, that Congress specified certain contexts in which a school may permissibly differentiate on the basis of sex, even though greater-than-de-minimis harm may result. *See* 89 Fed. Reg. at 33,816; *see, e.g.*, 20 U.S.C.

§ 1681(a)(6) (fraternities or sororities); § 1686 ("separate living facilities"); 34 C.F.R. 106.41(b) (sex-separate athletic teams). The Rule does not alter the existing athletics regulations, which are the subject of a separate rulemaking. *See* 89 Fed. Reg. 33,817.

Lastly, § 106.2 defines many terms, including prohibited "sex-based harassment." One form of such harassment is "[h]ostile environment harassment," defined as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (i.e., creates a hostile environment)." 89 Fed. Reg. at 33,884.

## B.    Prior Proceedings

Plaintiffs are Louisiana, Mississippi, Montana, and Idaho, as well as the Louisiana Department of Education and the School Board of Rapides Parish (SBRP).[2] Plaintiffs challenge the Rule's treatment of gender identity, claiming that the application of certain Rule provisions to contexts such as bathrooms and pronouns will cause them irreparable harm. *See* Dkt. No. 18-1, at 3-7 (States Mot.); Plaintiff's Memorandum in Support of Motion to Delay Effective Date and for Preliminary Injunction at 1, 3-7, *Rapides Par. Sch. Bd. v. U.S. Dep't of Educ.*, 1:24-cv-00567 (W.D. La.

---

[2] The court below consolidated the suit brought by SBRP with the suit brought by the plaintiff States and the Louisiana Department of Education. Dkt. No. 25. The court granted both sets of plaintiffs injunctive relief. Dkt. No. 53, at 3-4.

May 14, 2024), Dkt. No. 11-1 (SBRP Mot.).  Plaintiffs sought preliminary injunctive relief against the Rule.[3]

On June 13, 2024, the district court entered a preliminary injunction barring the Department from enforcing all aspects of the Rule within the plaintiff States.  Dkt. No. 53, at 39-40 (Op.).  The court held that the inclusion of gender identity in the scope of prohibited sex discrimination was contrary to Title IX, reasoning that "'sex discrimination' clearly include[s] only discrimination against biological males and females."  Op. 21.  The court rejected the Department's reliance on *Bostock*, which it concluded "does not apply to Title IX."  Op. 19.  The court noted that "*Bostock* dealt with Title VII" and reasoned that "the purpose of Title VII to prohibit discrimination in hiring is different than Title IX's purpose to protect biological women from discrimination in education."  Op. 21.

For similar reasons, the district court concluded that the major-questions doctrine and Spending Clause required clearer congressional authorization for the Rule.  Op. 23-30.  The court reasoned that the inclusion of gender identity in the scope of prohibited discrimination implicated questions of "vast economic and

---

[3] Others have also challenged the Rule.  *See Texas v. United States*, No. 2:24-cv-86 (N.D. Tex. filed Apr. 29, 2024); *Alabama v. Cardona*, No. 7:24-cv-533 (N.D. Ala. filed Apr. 29, 2024); *Tennessee v. Cardona*, No. 2:24-cv-72 (E.D. Ky. filed Apr. 30, 2024); *Oklahoma State Dep't of Educ. v. United States*, No. 5:24-cv-459 (W.D. Okla. filed May 6, 2024); *Oklahoma v. Cardona*, No. 5:24-cv-461 (W.D. Okla. filed May 6, 2024); *Arkansas v. U.S. Dep't of Educ.*, No. 4:24-cv-636 (E.D. Mo. filed May 7, 2024); *Kansas v. U.S. Dep't of Educ.*, No. 5:24-cv-4041 (D. Kan. filed May 14, 2024); *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-461 (N.D. Tex. filed May 21, 2024).

political significance" and that the Department lacked authority to "us[e] *Bostock* to make major changes in Title IX law." Op. 26-27. Likewise, the court held that the Rule violated the requirement that conditions on federal funding be unambiguous because Title IX's prohibition on sex discrimination did not provide notice "that the term 'sex' included gender identity." Op. 28.[4]

The court also concluded that the Rule's treatment of gender identity was arbitrary and capricious. According to the court, the Department failed to address several relevant factors related to compliance, privacy, enforcement, and non-binary students. Op. 32-34. The court also "question[ed]" how § 106.31(a)(2)'s de minimis harm standard applied in various contexts, suggesting that the provision was "ambiguous and therefore arbitrary and capricious." Op. 33-34.

Separately, the court held that the Rule's definition of hostile environment sex-based harassment would "require recipients of federal funding … to violate First Amendment rights." Op. 22. The court concluded that the harassment definition "compel[s] staff and students to use whatever pronouns a person demands" and "prohibits staff and students from expressing their own views" about gender identity. *Id.* The court acknowledged that federal agencies have applied a similar standard in the analogous context of Titles VI and VII "for decades." Op. 23. But the court concluded that it could not "simply apply the same standard to federally funded

---

[4] In light of its other holdings, the court declined to address plaintiffs' contention that the Rule violated the non-delegation doctrine. Op. 30.

educational institutions" because the "implications here are different" than other contexts. *Id.*

As to the remaining factors, the court concluded that plaintiffs faced irreparable harm in the form of compliance costs as well as "violation of First Amendment rights, preemption of state laws, loss of Title IX federal funds, pressure to change their laws, and invasion of state sovereignty." Op. 37. The court further concluded that the equities weighed in plaintiffs' favor because the interest in "keep[ing] the status quo" outweighed the Department's interests in "preventing discrimination in educational programs and activities." Op. 37-38.

In light of other challenges to the Rule, the court limited the injunction to plaintiffs. Op. 38. But the court did not limit the injunction to the provisions or applications of the Rule involving gender identity that the plaintiffs challenged or that the court deemed invalid. Instead, the court enjoined the Rule in its entirety. Op. 39-40.

## ARGUMENT

In determining whether to grant a stay pending appeal, this Court considers (1) likelihood of success on appeal; (2) whether the applicant will suffer irreparable injury; (3) the balance of hardships to other parties interested in the proceeding; and

(4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Each factor weighs in favor of partially staying the injunction.

## I. The Department is likely to succeed in showing that the district court's preliminary injunction is overbroad.

The Department is likely to succeed on its claim that the district court's injunction is overbroad. Constitutional and equitable principles require that injunctions be "tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). An injunction "must be vacated" if it "is not narrowly tailored to remedy the specific action which gives rise to the order." *O'Donnell v. Harris County*, 892 F.3d 147, 155, 163 (5th Cir. 2018) (quotation marks omitted), *overruled on other grounds by Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023) (en banc); *see, e.g., Labrador v. Poe*, 144 S. Ct. 921, 921 (2024) (staying preliminary injunction to the extent it applied beyond the plaintiffs and enjoined provisions of a state law that the plaintiffs did not challenge). The district court's injunction defies this fundamental principle of equitable relief several times over.

### A. The district court erred in enjoining provisions of the Rule not challenged by plaintiffs.

The district court's injunction is plainly overbroad in enjoining the many provisions of the Rule that plaintiffs do not challenge. As plaintiffs' filings make clear, their claims—and the purported harms underlying those claims—are grounded in objections to the Rule's treatment of gender identity. Dkt. No. 1 ¶ 3 (challenging Rule because it defines "discrimination based on 'sex' to include discrimination based

on 'gender identity'"); Complaint ¶ 64, *Rapides Par. Sch. Bd. v. U.S. Dep't of Educ.*, No. 1:24-cv-00567 (W.D. La. Apr. 30, 2024), Dkt. No. 1 (challenging Rule's "gender-identity mandates"). In particular, plaintiffs' challenges concern applications of three provisions of the Rule: the scope of prohibited discrimination in § 106.10; the de minimis harm standard in § 106.31(a)(2); and the definition of "hostile environment harassment" in § 106.2. *See* States Mot. 8-10; SBRP Mot. 4-7. The district court likewise focused on the effect of these provisions in enjoining the Rule. Op. 17-36.

The Rule, however, is hardly limited to those provisions. It revises many aspects of Title IX's current regulations—most of which have nothing to do with gender identity—such as provisions concerning the appointment of Title IX coordinators, 89 Fed. Reg. at 33,885 (to be codified at 34 C.F.R. § 106.8(a)); recipients' notice of nondiscrimination and record-keeping obligations, *id.* at 33,885-86 (to be codified at 34 C.F.R. § 106.8(c), (f)); access to lactation spaces, *id.* at 33,888 (to be codified at 34 C.F.R. § 106.40(b)(3)(v)); a recipient's response to sex discrimination, including supportive measures for involved parties, *id.* at 33,888-91 (to be codified at 34 C.F.R. § 106.44); grievance procedures for claims of sex discrimination, including sex-based harassment, *id.* at 33,888-95 (to be codified at 34 C.F.R. §§ 106.45-106.46); and prohibitions on retaliation, *id.* at 33,896 (to be codified at 34 C.F.R. §§ 106.2, 106.71).

Plaintiffs did not challenge any of these provisions in their request for injunctive relief. Nor did they identify any harm that they stand to suffer from these

provisions. Likewise, although the district court recognized that the Rule made changes to recipients' reporting requirements and school grievance procedures, Op. 2, the court nowhere suggested that those provisions were invalid or that they harmed plaintiffs. The district court nonetheless enjoined the entire Rule without any explanation as to why doing so was necessary to remedy the plaintiffs' asserted injuries.[5]

That was error. It contravenes bedrock principles of equity to enjoin provisions of the Rule beyond those challenged by plaintiffs—*i.e.*, beyond particular applications of §§ 106.10, 106.31(a)(2), and 106.2. *See, e.g., Gill*, 585 U.S. at 73; *see also Labrador*, 144 S. Ct. at 923 (Gorsuch J., concurring in the grant of stay) (concluding that the "the district court clearly strayed from equity's traditional bounds" in enjoining provisions of a law that plaintiffs "failed to 'engage' with" and that "don't presently affect them"); *Southwestern Elec. Power Co. v. U.S. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (limiting relief to "unlawful[] … portions" of agency rule).

Nor is this a case where the various provisions of the Rule are so intertwined with the challenged sections that it would be unworkable to enjoin the Rule only in

---

[5] The district court stated that courts "can vacate rules that are beyond the executive agencies' authority." Op. 39. The Department disputes that vacatur is ever an appropriate remedy under the Administrative Procedure Act. *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring in the judgment). In any event, the district court granted a preliminary injunction, not vacatur. Even if vacatur were an appropriate remedy, there would be no basis to vacate provisions that plaintiffs do not challenge. *See VanDerStok v. Garland*, 86 F. 4th 179, 196-97 (5th Cir. 2023).

part. The Department made an express severability determination, explaining that "each of the provisions of these final regulations discussed in this preamble serve an important, related, but distinct purpose," 89 Fed. Reg. at 33,848, removing any doubt that Department would have adopted the Rule's unchallenged provisions addressing grievance procedures, lactation accommodations, and other issues not related to gender identity on their own. *See id.* (discussing the Rule's severability provisions to be codified at 34 C.F.R. §§ 106.16 and 106.48, and existing provisions at 34 C.F.R. §§ 106.9, 106.24, 106.62, 106.72, and 106.82); *American Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 384 (D.C. Cir. 2021) (severability of regulations "depends on the issuing agency's intent," and whether the "agency would have adopted the severed portion on its own" to "operate[] independently" (quotation marks omitted)). At a minimum, therefore, the district court's injunction should be stayed to the extent it applies beyond the three provisions plaintiffs challenge.

## B. Even as to the challenged provisions, the district court's injunction is overbroad.

The district court's injunction is overbroad even as to the few provisions plaintiffs challenge. Most importantly, plaintiffs identify no harm from § 106.10's prohibition on discriminating against students simply for being transgender. Their asserted injuries all stem from other provisions of the Rule—namely, § 106.31(a)(2)'s limitations on recipients' ability to engage in differential treatment based on sex with respect to students whose gender identities differ from their sex assigned at birth and

§ 106.2's definition of hostile-environment harassment as applied to discrimination on the basis of gender identity. Plaintiffs failed to establish their entitlement to an injunction that extends to § 106.10 or beyond § 106.31(a)(2) and the challenged aspects of § 106.2.

### 1. Plaintiffs are not entitled to an injunction against § 106.10's basic prohibition on gender-identity discrimination.

The problem of overbreadth is particularly evident with respect to § 106.10. As explained, Title IX prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681. Section 106.10 sets out the scope of that prohibition, explaining that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity," 89 Fed. Reg. at 33,886, "because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female,'" *id.* at 33,802 (quoting *Bostock*, 590 U.S. at 655). Section 106.10 thus makes clear that prohibited sex discrimination for purposes of Title IX includes actions like excluding a student from homecoming for being pregnant, giving a student detention for being gay, or barring a student from band for being transgender. The district court erred in enjoining § 106.10 because the harms plaintiffs invoke flow from other provisions, not § 106.10. And the district court's decision to nonetheless enjoin § 106.10 was doubly flawed because plaintiffs cannot

succeed on the merits of their challenge to that provision, which represents a clear-cut application of *Bostock*.

**a.** The Department is likely to succeed in showing that the district court erred in enjoining § 106.10 because Plaintiffs identify no harm that flows from that provision. And the harms they do allege may be fully redressed by enjoining § 106.31(a)(2) and § 106.2's definition of hostile-environment harassment as it applies to gender identity discrimination.

As a preliminary matter, plaintiffs do not challenge all of § 106.10 such as the portions recognizing that prohibited discrimination includes discrimination on the basis of pregnancy or sexual orientation; indeed, plaintiffs nowhere suggest that they intend to engage in discrimination against students for being pregnant or gay at all. Plaintiffs thus offer no reason to enjoin these aspects of § 106.10.

Even as to § 106.10's inclusion of gender identity, plaintiffs do not suggest that an injunction is necessary because they intend to engage in the quintessential discrimination based on gender identity that the Supreme Court confronted in *Bostock*—treating transgender students worse "simply for being … transgender." 590 U.S. at 651-52. Plaintiffs do not, for instance, claim that they will be irreparably harmed if they cannot bar transgender students from participating in the science fair or student government because they are transgender. Yet if § 106.10 were enjoined, the Department's Title IX regulations would not expressly bar such sex discrimination.

Rather, plaintiffs object to the Rule's provisions regarding gender identity as applied to sex-separate facilities like bathrooms and the use of pronouns when addressing transgender students. *See* States Mot. 1-2; SBRP Mot. 3-7. But § 106.10 is not the cause of plaintiffs' harms; rather, plaintiffs' quarrel stems from the provisions of § 106.31(a)(2) regarding permissible sex-separation and § 106.2's definition of hostile-environment harassment as applied to gender identity discrimination. The Supreme Court's analysis in in *Bostock* reflects this distinction, holding that discrimination on the basis of gender identity is necessarily a form of prohibited sex discrimination without "purport[ing] to address bathrooms, locker rooms," or other sex-differentiated contexts. 590 U.S. at 681.

Accordingly, the portions of the injunction that the Department does not seek to stay will fully protect against their asserted harms while the appeal proceeds. And plaintiffs identify no other harms that would justify enjoining § 106.10, which the Department also expressly explained should operate independently if other provisions of the Rule were invalidated. *See* 89 Fed. Reg. 33,848 (identifying § 106.10 in its severability discussion as an example of a provision "intended to operate independently" of other provisions in the Rule, and in particular noting that it is "distinct" from the Rule's definition of "sex-based harassment[] … and the prevention of participation consistent with gender identity, which are addressed in §§ 106.2 and 106.31(a)"); *see also id.* (discussing severability regulation to be recodified at § 106.16).

**b.** The government is also likely to succeed in appealing the preliminary injunction against enforcement of § 106.10 because that provision reflects a straightforward application of *Bostock*. There, the Court confronted Title VII's provision making it unlawful "for an employer … to discriminate against any individual ... because of such individual's ... sex." 590 U.S. at 655 (quoting 42 U.S.C. § 2000e-2(a)(1)). The Court explained that Title VII's "because of" language "incorporates the 'simple' and 'traditional' standard of but-for causation." *Id.* at 656-57 (quotation marks omitted). "[S]ex is necessarily a but-for cause" of discrimination on the basis of sexual orientation or gender identity, the Court explained, "because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 660, 661 (emphasis omitted). Such discrimination would, for example, "penalize[] a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." *Id.* at 660. That is true even on the assumption that "sex" in Title VII "refer[s] only to biological distinctions between male and female," *id.* at 655, and even without having to decide how the insight applies to contexts such as "bathrooms, locker rooms, and dress codes," *id.* at 681.

*Bostock*'s reasoning applies with equal force to Title IX's prohibition on discrimination "on the basis of sex." Title IX imposes a causation standard no more stringent than but-for causation under Title VII. And as *Bostock* made clear, "sex is necessarily a but-for cause" of discrimination on the basis of sexual orientation and

gender identity. 590 U.S. at 661 (emphasis omitted). A school, no less than an employer, engages in sex discrimination when it "penalizes a person … for traits or actions that it tolerates" in persons identified as a different sex "at birth." *Id.* at 660.

Indeed, this Court has emphasized "Title IX's similarity to Title VII," explaining that "the prohibitions of discrimination on the basis of sex [in] Title IX and Title VII are the same." *Lakoski v. James*, 66 F.3d 751, 756-57 & n.3 (5th Cir. 1995). That is why various courts have concluded that in light of *Bostock*, discrimination on the basis of sexual orientation and gender identity are necessarily forms of prohibited sex discrimination under Title IX. *See, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020); *A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023). That conclusion does not depend, the Department explained, on viewing the term "sex" in Title IX to mean anything other than "only physiological or 'biological distinctions between male and female.'" 89 Fed. Reg. at 33,802 (quoting *Bostock*, 590 U.S. at 655). The district court's conclusion that *Bostock*'s reasoning has no application to Title IX, Op. 18-22, was therefore error. Because plaintiffs' challenge to § 106.10 cannot be reconciled with Supreme Court precedent, the district court's injunction of that provision could be stayed on that basis alone, even setting aside the absence of harms.

### 2. The injunction is overbroad in enjoining § 106.2 in all respects.

The injunction is also overbroad insofar as it bars *all* applications of § 106.2. Notably, the Department's severability determination is not confined to the consequences of a whole provision within the Rule being invalidated; the Rule specifically provides that even "[i]f any provision of this subpart [containing § 106.2] *or its application to any person, act, or practice* is held invalid, the remainder of the subpart *or the application of its provisions to any person, act, or practice* shall not be affected thereby." 34 C.F.R. § 106.9) (emphases added); *see* 89 Fed. Reg. at 33,848.

Enjoining § 106.2 wholesale stretches far beyond plaintiffs' quarrel with this provision. To begin, § 106.2 defines many terms, but plaintiffs' challenges only involve its definition of one particular form of sex-based harassment: hostile-environment harassment. There is no justification for enjoining the definitions plaintiffs have not challenged.

Moreover, the injunction is overbroad even as it applies to the definition of hostile-environment harassment, which Section 106.2 describes as "[u]nwelcome sex-based conduct that[] … is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity." 89 Fed. Reg. at 33,884 (to be codified at 34

C.F.R. § 106.2).[6]  Plaintiffs object only to the application of this standard to

discrimination on the basis of gender identity, focusing on the use of pronouns and

salutations.  States Mot. 1-2; SBRP Mot. 7; *see also* Op. 22.  But § 106.2's hostile-

environment standard applies beyond gender-identity discrimination.  It protects all

students from "[u]nwelcome sex-based conduct."  89 Fed. Reg. at 33,884.  Plaintiffs

offer no explanation for how they are harmed by § 106.2's application outside the

context of gender-identity-based discrimination.  Indeed, the district court recognized

that "harassment against any person, whether it be based on their gender identity or

sexual orientation, is unacceptable" and that "[h]arassment against children in school"

is especially "inappropriate."  Op. 1.

## II.    The remaining factors favor a partial stay.

The remaining stay factors tilt decisively towards the Department.  Every time

the federal government "is enjoined by a court from effectuating statutes enacted by

representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*,

567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quotation marks omitted).

The harm is particularly pronounced here because the Rule effectuates Title IX's twin

goals of "avoid[ing] the use of federal resources to support discriminatory practices[]

[and] provid[ing] individual citizens effective protection against those practices."

---

[6] Plaintiffs do not challenge the other prongs of § 106.2's definition of sex-based harassment, which include "quid pro quo harassment," or the dozens of other definitions within § 106.2.

*Cannon v. University of Chi.*, 441 U.S. 677, 704 (1979). No one disputes that preventing

discrimination serves a compelling public interest. *See EEOC v. Bass Pro Outdoor*

*World, L.L.C.*, 826 F.3d 791, 798 (5th Cir. 2016). Moreover, the overbroad injunction

could impair the rights of individuals with respect to Rule provisions that are

unrelated to plaintiffs' claims by, for example, precluding the Department from taking

steps to ensure that breastfeeding students have access to lactation spaces or that

students are not punished simply for being pregnant, gay, or transgender.

By contrast, plaintiffs suffer no harm from the proposed stay. As discussed,

plaintiffs identify no cognizable harm from the many provisions of the Rule that they

did not challenge. As to the provisions plaintiffs do challenge, they identify no harm

from the application of those provisions in the mine-run of circumstances.

Accordingly, the harms that the district court found justified preliminary relief are not

implicated here, and, in any event, would not outweigh the harm to the Department

from the court's overbroad injunction.

## CONCLUSION

The district court's preliminary injunction should be stayed to the extent it

extends beyond the following 2024 Rule provisions: (i) 34 C.F.R. § 106.31(a)(2), and

(ii) 34 C.F.R. § 106.2's definition of "hostile environment harassment" as applied to

discrimination on the basis of gender identity. The Department respectfully requests

a decision on this request by July 12 to allow the Solicitor General to decide whether

to seek relief from the Supreme Court—and to allow the Court to consider any such request—if this Court denies relief.

Respectfully submitted,

<table>
<tr><td><i>Of Counsel:</i></td><td>BRIAN M. BOYNTON</td></tr>
<tr><td>LISA BROWN</td><td><i>Principal Deputy Assistant Attorney General</i></td></tr>
<tr><td><i>General Counsel</i><br><i>U.S. Department of Education</i></td><td></td></tr>
</table>

<div style="margin-left:auto">

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*
MELISSA N. PATTERSON
STEPHANIE R. MARCUS
 *s/ Jack Starcher*
JACK STARCHER
STEVEN A. MYERS
DAVID L. PETERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

</div>

July 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,197 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

I further certify that this emergency motion complies with the requirements of Fifth Circuit Rules 27.3 and 27.4 because it was preceded by telephone calls to the Clerk's Office and to the offices of opposing counsel, advising of our intent to file it. Plaintiffs-appellees oppose this motion and will file an opposition. I further certify that the facts supporting emergency consideration of this motion are true and complete.

_s/Jack Starcher_
Jack Starcher

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Jack Starcher*
Jack Starcher