No. 24-30399

# In the United States Court of Appeals for the Fifth Circuit

STATE OF LOUISIANA, BY AND THROUGH ITS ATTORNEY GENERAL,
ELIZABETH B. MURRILL; LOUISIANA DEPARTMENT OF EDUCATION; STATE
OF MISSISSIPPI, BY AND THROUGH ITS ATTORNEY GENERAL, LYNN FITCH;
STATE OF MONTANA, BY AND THROUGH ITS ATTORNEY GENERAL, AUSTIN
KNUDSEN; STATE OF IDAHO, BY AND THROUGH ITS ATTORNEY GENERAL,
RAUL LABRADOR; WEBSTER PARISH SCHOOL BOARD; RED RIVER PARISH
SCHOOL BOARD; BOSSIER PARISH SCHOOL BOARD; SABINE PARISH SCHOOL
BOARD; GRANT PARISH SCHOOL BOARD; WEST CARROLL PARISH SCHOOL
BOARD; CADDO PARISH SCHOOL BOARD; NATCHITOCHES PARISH SCHOOL
BOARD; CALDWELL PARISH SCHOOL BOARD; ALLEN PARISH SCHOOL BOARD;
LASALLE PARISH SCHOOL BOARD; JEFFERSON DAVIS PARISH SCHOOL
BOARD; OUACHITA PARISH SCHOOL BOARD; FRANKLIN PARISH SCHOOL
BOARD; ACADIA PARISH SCHOOL BOARD; DESOTO PARISH SCHOOL BOARD;
ST. TAMMANY PARISH SCHOOL BOARD,
*Plaintiffs-Appellees,*

v.

UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, IN
HIS OFFICIAL CAPACITY AS SECRETARY OF EDUCATION; OFFICE FOR CIVIL
RIGHTS, UNITED STATES DEPARTMENT OF EDUCATION; CATHERINE
LHAMON, IN HER OFFICIAL CAPACITY AS THE ASSISTANT SECRETARY FOR
CIVIL RIGHTS; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B.
GARLAND, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE
UNITED STATES; KRISTEN CLARKE, IN HER OFFICIAL CAPACITY AS
ASSISTANT ATTORNEY GENERAL FOR THE CIVIL RIGHTS DIVISION OF
UNITED STATES DEPARTMENT OF JUSTICE,
*Defendants-Appellants*

RAPIDES PARISH SCHOOL BOARD,
*Plaintiff-Appellee*

v.

UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF EDUCATION; OFFICE FOR CIVIL RIGHTS, UNITED STATES DEPARTMENT OF EDUCATION; CATHERINE LHAMON, IN HER OFFICIAL CAPACITY AS THE ASSISTANT SECRETARY FOR CIVIL RIGHTS; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE UNITED STATES; KRISTEN CLARKE, IN HER OFFICIAL CAPACITY AS ASSISTANT ATTORNEY GENERAL FOR THE CIVIL RIGHTS DIVISION OF UNITED STATES DEPARTMENT OF JUSTICE,
*Defendants-Appellants*

———————————————

On Appeal from the United States District Court
for the Western District of Louisiana
Nos. 3:24-CV-563, 1:24-CV-567

———————————————

## OPPOSITION TO EMERGENCY MOTION UNDER CIRCUIT RULE 27.3 FOR A PARTIAL STAY PENDING APPEAL

———————————————

Additional Counsel Listed on Next Page

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746

J. BENJAMIN AGUIÑAGA
Solicitor General

AUTUMN HAMIT PATTERSON
Special Assistant Solicitor General

*Counsel for Plaintiffs-Appellees State of Louisiana, Louisiana Department of Education, and Plaintiff School Boards*

LYNN FITCH
Attorney General of Mississippi

SCOTT G. STEWART
Solicitor General
JUSTIN L. MATHENY
Deputy Solicitor General
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
P.O. Box 220
Jackson, Mississippi 39205
(601) 359-3680

*Counsel for Plaintiff-Appellee
State of Mississippi*

RAÚL LABRADOR
Attorney General of Idaho

ALAN HURST
Solicitor General
JOSH TURNER
Chief of Constitutional
Litigation and Policy
OFFICE OF THE ATTORNEY
GENERAL OF IDAHO
700 W. Jefferson Street
Suite 201
P.O. Box 83720
Boise, Idaho 83720
(208) 334-2400

*Counsel for Plaintiff-Appellee
State of Idaho*

AUSTIN KNUDSEN
Attorney General of Montana

CHRISTIAN B. CORRIGAN
Solicitor General
PETER TORSTENSEN
Deputy Solicitor General
MONTANA DEPARTMENT OF JUSTICE
215 N. Sanders Street
Helena, Montana 59601
(406) 444-2707

*Counsel for Plaintiff-Appellee State
of Montana*

DONALD A. DAUGHERTY, JR.
Senior Counsel, Litigation
PAUL ZIMMERMAN
Senior Counsel, Policy and
Regulation
MARTHA A. ASTOR
Counsel, Litigation
DEFENSE OF FREEDOM INSTITUTE
FOR POLICY STUDIES
1455 Pennsylvania Avenue, NW,
Suite 400 Washington, DC 20004
(414) 559-6902

*Counsel for Plaintiff-Appellee States*

# CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, a certificate of interested persons

is not required because Plaintiffs-Appellees are governmental parties.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................... i

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION .................................................................................... 1

BACKGROUND ...................................................................................... 3

ARGUMENT ............................................................................................ 8

   I.  DEFENDANTS' MOTION IS PROCEDURALLY IMPROPER AND
      ASSERTS FORFEITED ARGUMENTS. .................................................... 8

   II. DEFENDANTS CANNOT SATISFY THE STAY FACTORS. .......................... 9

      A. Defendants Have Not Made a Strong Showing Their
         Appeal Is Likely to Succeed. ...................................................... 10

      B. Defendants Will Suffer No Irreparable Harm Absent
         a Partial Stay. ............................................................................ 20

      C. Plaintiffs Will Suffer Irreparable Harm if a Partial
         Stay Is Granted. ......................................................................... 22

      D. A Partial Stay Would Disserve the Public Interest. ................. 25

CONCLUSION ....................................................................................... 26

CERTIFICATE OF SERVICE ................................................................. 29

CERTIFICATE OF COMPLIANCE ......................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Adams v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) (en banc) .......................................... 4, 20

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ....................................... 5, 13, 17, 18, 19

*Braidwood Mgmt., Inc. v. EEOC*,
70 F.4th 914 (5th Cir. 2023) ............................................... 19

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) ................................................. 2

*Cannon v. Univ. of Chicago*,
441 U.S. 677 (1979) .......................................................... 4

*Carlson v. Postal Regulatory Comm'n*,
938 F.3d 337 (D.C. Cir. 2019) ............................................ 17

*Chamber of Commerce v. U.S. Dep't of Labor*,
885 F.3d 360 (5th Cir. 2018) .............................................. 17

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ............................................ 21

*Doster v. Kendall*,
54 F.4th 398 (6th Cir. 2022) .............................................. 13

*Frontiero v. Richardson*,
411 U.S. 677 (1973) .......................................................... 4

*Griffin v. HM Florida-ORL, LLC*,
144 S. Ct. 1 (2023) .......................................................... 12

*Grove City Coll. v. Bell*,
465 U.S. 555 (1984) .......................................................... 5

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ............................................................... 19

*Kansas v. U.S. Dep't of Educ.*,
    No. 24-4041-JWB, 2024 WL 3273285
    (D. Kan. July 2, 2024) ................................................... 11, 17

*Keyishian v. Bd. of Regents of Univ. of State of N. Y.*,
    385 U.S. 589 (1967) ............................................................... 25

*Kisor v. Wilkie*,
    588 U.S. 558, 594 (2019) .......................................................5

*L. W. v. Skrmetti*,
    83 F.4th 460 (6th Cir. 2023) ....................................... 18, 19

*Labrador v. Poe*,
    144 S. Ct. 921 (2024) ........................................................... 11

*Lakoski v. James*,
    66 F.3d 751 (5th Cir. 1995) ............................................... 19

*Loper Bright Enters. v. Raimondo*,
    No. 22-1219, 2024 WL 3208360 (U.S. June 28, 2024) .............. 12, 21

*Maryland v. King*,
    567 U.S. 1301 (2012) ........................................................... 20

*Mayor of Baltimore v. Azar*,
    973 F.3d 258 (4th Cir. 2020) (en banc) ............................. 16

*MD/DC/DE Broadcasters Ass'n v. FCC*,
    236 F.3d 13 (D.C. Cir. 2001) ......................................... 9, 16

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ............................................. 19

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................... 10, 11, 24

*Plaquemines Parish v. Chevron USA, Inc.,*
    84 F.4th 362 (5th Cir. 2023) ........................................... 10

*R.J. Reynolds Vapor Co. v. FDA,*
    65 F.4th 182 (5th Cir. 2023) ........................................... 11

*Rest. Law Ctr. v. U.S. Dep't of Labor,*
    66 F.4th 593 (5th Cir. 2023) ........................................... 22

*Rhone v. City of Texas City,*
    No. 22-40551, 2022 WL 4310058 (5th Cir. Sept. 19, 2022) ................. 8

*Rosa H. v. San Elizario Indep. Sch. Dist.,*
    106 F.3d 648 (5th Cir. 1997) ........................................... 19

*Soule v. Connecticut Ass'n of Sch., Inc.,*
    90 F.4th 34 (2d Cir. 2023) ............................................. 19

*Sw. Elec. Power Co. v. EPA,*
    920 F.3d 999 (5th Cir. 2019) ........................................... 17

*Tennessee v. Cardona,*
    No. CV 2:24-072-DCR, 2024 WL 3019146
    (E.D. Ky. June 17, 2024) ........................................... 11, 17

*Tennessee v. Dep't of Educ.,*
    104 F.4th 577 (6th Cir. 2024) ...................................... 14, 23

*Texans for Free Enter. v. Tex. Ethics Comm'n,*
    732 F.3d 535 (5th Cir. 2013) ........................................... 25

*Texas v. Becerra,*
    No. 6:24-CV-211-JDK, 2024 WL 3297147
    (E.D. Tex. July 3, 2024) ............................................... 17

*Texas v. Biden,*
    10 F.4th 538 (5th Cir. 2021) ....................................... 20, 25

*Texas v. Cardona,*
    No. 4:23-CV-00604-O, 2024 WL 2947022
    (N.D. Tex. June 11, 2024) ........................................... *passim*

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) .............................................. 9

*U.S. Navy Seals 1-26 v. Biden,*
    27 F.4th 336 (5th Cir. 2022) ............................................ 10

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) ...................................................... 12

*Wages & White Lion Invs., L.L.C. v FDA,*
    16 F.4th 1130 (5th Cir. 2021) .......................................... 12

## Statutes and Rules

5 U.S.C. § 705 ................................................................. 11

20 U.S.C. § 1681 ............................................................... 4

20 U.S.C. § 1686 ............................................................... 5

34 C.F.R. § 106.2 ............................................................. 23

34 C.F.R. § 106.10 ........................................................... 23

34 C.F.R. § 106.31 ........................................................... 23

40 Fed. Reg. 24,128 (Jun. 4, 1975) .......................................... 5

89 Fed. Reg. 33,474 (Apr. 29, 2024) .................................. *passim*

Fed. R. App. P. 8 .............................................................. 8

Fifth Cir. Rule 27.3.................................................................2

**Other Authorities**

118 Cong. Rec. 5803 (Feb. 28, 1972) ......................................3

U.S. Dep't of Justice and U.S. Dep't of Educ., *Confronting Anti-LGBTQI+ Harassment in Schools* (June 23, 2021), https://www2.ed.gov/about/offices/list/ocr/docs/ocr-factsheet-tix-202106.pdf...........................................................................24

## INTRODUCTION

Defendants-Appellees departed from decades of regulations in a new, not-yet-effective rule that rewrites Title IX and guts its promise of equal educational opportunities for both sexes. *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (the "Rule"). The Rule's lawlessness is extensive and shocking. So are its harmful consequences. Accordingly, Plaintiffs-Appellees sued minutes after the Rule was published and promptly filed a motion for preliminary relief to preserve the status quo pending judicial review.

The district court acted quickly. It postponed the Rule's effective date and issued a preliminary injunction that preserves the status quo in the four Plaintiff States. Weeks later, Defendants filed an "emergency" motion, requesting a partial stay so that some of the Rule's provisions can go into effect. But there is no emergency. There is no urgent need to upset the decades-long status quo in four States and allow some provisions of the unlawful Rule to go into effect, especially when Defendants *themselves* delayed issuing the Rule multiple times. *Cf. BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 611 & n.11 (5th Cir. 2021).

Defendants fail to show any irreparable harm justifying a partial stay, much less any immediate need for relief that justifies disrupting "the normal appellate process." Fifth Cir. Rule 27.3. What is more, Defendants—who did not act for eleven days after the district court's ruling and then gave that court only seven days to rule on their stay motion—flout procedural requirements by attempting to leapfrog the district court. This warrants denying the motion. So too does the motion's meritless nature.

Tellingly, Defendants give short shrift to three of the four stay factors, because even they cannot seriously pretend those factors weigh in favor of a partial stay. It is apparent that (1) Defendants will experience *no* irreparable harm absent a stay; (2) Plaintiffs *will* be irreparably harmed by a stay; and (3) a stay undermines the public interest. Nevertheless, Defendants' cursory treatment of those factors is still better than Defendants' likelihood-of-success showing.

Defendants do not argue the merits of their appeal overall, but rather argue only that their scope-of-relief argument will likely succeed. That means, for purposes of this motion, Defendants do not dispute that the Rule likely conflicts with Title IX, exceeds statutory authority,

imposes conditions in violation of the Spending Clause, and is arbitrary and capricious. What is more, Plaintiffs have shown that the Rule's provisions operate together to unlawfully (1) increase their obligations, liability risks, and compliance costs, (2) coerce them into changing state laws and school board practices, and (3) induce them to violate constitutional rights. It thus follows that the current injunctive relief—which is geographically limited and applies to the entire Rule—is necessary to prevent irreparable harm and maintain the status quo. It also follows that Defendants cannot show their scope-of-relief argument is likely to succeed. That is why Defendants resort to mischaracterizing the scope of Plaintiffs' suit, the Rule's provisions, and precedent, and to overlooking the myriad ways the Rule harms Plaintiffs. The Court should reject such tactics and deny Defendants' procedurally deficient and meritless motion.

## BACKGROUND

Motivated by the "corrosive and unjustified discrimination against women" in "all facets of education," 118 Cong. Rec. 5803 (Feb. 28, 1972) (Statement of Sen. Bayh), Congress enacted Title IX "to avoid the use of federal resources to support [such] discriminatory practices," *Cannon v.*

*Univ. of Chicago*, 441 U.S. 677, 704 (1979). To that end, Title IX prohibits, "on the basis of sex," "discrimination under any education program or activity receiving Federal financial assistance [with statutory exceptions]." 20 U.S.C. § 1681(a). The statutory exceptions permit, for example, single-sex groups and activities like sororities and fraternities. *Id.* § 1681(a)(6).

At the time of Title IX's enactment, the term "sex" meant a person's biological sex—male or female—which "is an immutable characteristic determined" at "birth." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality op.); *see, e.g.*, *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022) (en banc). Title IX uses this ordinary meaning of "sex," as reflected throughout its provisions. *See Texas v. Cardona*, No. 4:23-CV-00604-O, 2024 WL 2947022, at *31 (N.D. Tex. June 11, 2024). Title IX thus generally prohibits federal funding recipients from discriminating against a person based on their biological sex.

At the same time, Title IX recognizes that biological differences occasionally demand differentiation between the two sexes. Section 1686 instructs, for example, that Title IX shall not "be construed" as prohibiting recipients "from maintaining separate living facilities for the

different sexes." 20 U.S.C. § 1686. This statutory instruction about how to interpret Title IX reflects that separating the sexes "where personal privacy must be preserved" and where biological differences matter is *not* discrimination. *Texas*, 2024 WL 2947022, at *32 (quotation omitted). And this comports with the meaning of *discrimination*, because boys and girls are not similarly situated in contexts where differences between the sexes matter. *See, e.g.*, *Bostock v. Clayton County*, 590 U.S. 644, 657 (2020) (discrimination means to treat "worse than others who are similarly situated"). Longstanding regulations, including the earliest ones that have special probative value, *see Grove City Coll. v. Bell*, 465 U.S. 555, 567–68 (1984); *Kisor v. Wilkie*, 588 U.S. 558, 594 (2019) (Gorsuch, J., concurring), further underscore that not all differentiation based on sex is discrimination under Title IX, *see, e.g.*, 40 Fed. Reg. 24,128, 24,141 (Jun. 4, 1975) (permitting "separate toilet, locker room, and shower facilities on the basis of sex" and separation of "students by sex within physical education classes"); *id.* (allowing "separate sessions for boys and girls" when dealing with "human sexuality"); *id.* at 24,132, 24,141 (requiring different standards in physical education classes where necessary so women are not adversely impacted).

On April 29, 2024, Defendants published the Rule, which would upend Title IX and the longstanding regulatory framework beginning August 1, 2024: the Rule's effective date. *See* 89 Fed. Reg. at 33,474. Among other changes, the Rule expands sex discrimination to include discrimination based on grounds other than biological sex: namely, "sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." *Id.* at 33,476. It also mandates that recipients (a) generally treat persons consistently with their self-professed gender identity, (b) allow persons to use whichever single-sex bathroom or locker room corresponds with their self-professed gender identity at that particular time, and (c) compel staff and students to use whatever pronouns are demanded. *See id.* at 33,516, 33,818, 33,886–87. The Rule warns that recipients cannot impose documentation requirements to verify a person's sincerity, such as evidence of a valid gender-dysphoria diagnosis, and allows any male, including individuals from the general community, who claims a female gender identity to use girls-only bathrooms and locker rooms. *See id.* at 33,816–18.

The Rule also adopts an expansive definition of "hostile environment harassment" that requires recipients to monitor and censor

speech related to "sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity" and to consider speech outside of recipients' education programs if it could allegedly contribute to a hostile environment. *Id.* at 33,530, 33,884, 33,886. Moreover, the Rule increases compliance obligations, such as by expanding reporting, recordkeeping, and response requirements. *See, e.g.*, *id.* at 33,563, 33,597, 33,886, 33,888.

Plaintiffs filed a detailed complaint, amended complaint, and a motion for a postponement, a stay, or a preliminary injunction. *See* ECF 1, 11, 17–18, 24.[1] On June 13, 2024, the district court granted a preliminary injunction and postponed the Rule's effective date in the four Plaintiff States. ECF 53 at 39–40. It concluded Plaintiffs would likely succeed on their claims that the Rule is contrary to law, exceeds statutory authority, violates the Spending Clause, and is arbitrary and capricious. *Id.* at 16–36.

On June 24, 2024, Defendants moved for a partial stay pending appeal in the district court. ECF 59. The district court immediately

---

[1] This brief refers to Plaintiffs in case number 3:24-CV-563 below. Relatedly, cites to "ECF" refer to docket entries from that case.

expedited the briefing schedule, ordering the briefing to be completed by July 3. ECF 63. Defendants, however, filed an "emergency" motion for a partial stay with this Court on July 1—the same day Plaintiffs filed their stay opposition in the district court. ECF 66.

## ARGUMENT

### I. DEFENDANTS' MOTION IS PROCEDURALLY IMPROPER AND ASSERTS FORFEITED ARGUMENTS.

As a preliminary matter, Defendants failed to comply with the Federal Rules, which "ordinarily" requires a party to "move first in the district court" for a stay, state that the district court "failed to afford the relief requested," and provide "any reasons given." Fed. R. App. P. 8(a)(1), (2). Although the district court expedited briefing on Defendants' motion, Defendants filed a stay motion with this Court before that briefing was even completed and before the district court ruled. In the circumstances here, that means "this motion is premature" and should be denied. *Rhone v. City of Texas City*, No. 22-40551, 2022 WL 4310058, at *1 (5th Cir. Sept. 19, 2022) (per curiam).

The Court can also deny this motion because Defendants assert forfeited arguments. In their opposition below, Defendants made a cursory, undeveloped request for a narrow injunction. ECF 38 at 39.

Defendants referenced the Rule's severability discussion but failed to identify what specific provisions they believed should be severed or otherwise provide guidance regarding their desired relief. *Id.* Defendants also failed to explain (and even now fail to explain) how the "remainder of the regulation could function sensibly" without "the offending portion[s]." *MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001).[2] By offering only a "cursory comment" about the scope of relief and not responding to arguments that the Rule's provisions operate together to cause harm, Defendants forfeited "any argument about the scope" of relief. *See Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016). This provides yet another reason to deny Defendants' motion.

## II. DEFENDANTS CANNOT SATISFY THE STAY FACTORS.

The Court should also deny this motion on the merits, because Defendants cannot meet their "heavy burden" to show the "extraordinary relief" they seek is justified. *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023) (quotations omitted).

---

[2] Before this Court, Defendants simply point (at 13) to the Rule's severability statement, but that is insufficient. A severability provision is not conclusive of intent, and intent is only half of the severability analysis. *See id.* at 22–23; Ex. 1: Order, *Tennessee v. Cardona*, No. 2:24-cv-00072, ECF 117 at 19–20 (E.D. Ky. July 10, 2024).

In determining whether Defendants have satisfied this burden, the Court must apply the familiar four-factor test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because Defendants are applying for a stay, not opposing one, the factors remain "distinct." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022) (per curiam). The two "most important" factors are likelihood of success and irreparable injury. *Plaquemines Parish*, 84 F.4th at 376. Defendants fail to show either factor weighs in their favor, and their half-hearted attempts on the remaining factors likewise fail. *See* Ex. 1.

## A. Defendants Have Not Made a Strong Showing Their Appeal Is Likely to Succeed.

The Rule, among other legal defects, likely contravenes Title IX, violates the Spending Clause, and is arbitrary and capricious—as the district court properly concluded (and multiple courts have confirmed).

*See* ECF 53 at 16–36.[3] This precludes Defendants from making a "strong showing" that their appeal will likely succeed. *Nken*, 556 U.S. at 434. Indeed, Defendants do not develop any argument that their appeal will succeed overall but argue only that the injunction is overbroad.

But even Defendants' scope-of-relief argument is unlikely to succeed. The district court did not enjoin enforcement of a democratically enacted state statute, nor did it provide "'universal' relief." *Labrador v. Poe*, 144 S. Ct. 921, 921 (2024) (Gorsuch, J., concurring); *see* Stay Mot. 10 (citing *Labrador*, 144 S. Ct. at 921). The district court instead granted geographically limited relief to halt bureaucratic subversion of a democratically enacted, federal statute and to stop "a significant change in the status quo" that has existed for decades. ECF 53 at 38; *see R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 194–95 (5th Cir. 2023) (emphasizing the importance of maintaining a seven-year status quo). 5 U.S.C. § 705 expressly authorizes courts to preserve the status quo pending review of an agency action, and this context does not raise the

---

[3] *See also Tennessee v. Cardona*, No. 2:24-cv-00072, 2024 WL 3019146, at *8–36 (E.D. Ky. June 17, 2024), *Kansas v. U.S. Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3273285, at *8–17 (D. Kan. July 2, 2024); *cf. Texas*, 2024 WL 2947022, at *29–43.

same concerns about federal intrusion into state sovereignty or judicial overreach into the legislative branch. *See Wages & White Lion Invs., L.L.C. v FDA*, 16 F.4th 1130, 1144 (5th Cir. 2021) (recognizing courts can provide "interim relief" that "preserve[s] the *status quo ante*" that existed before the agency action); *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J., statement regarding stay denial) (acknowledging relief granted in the APA context is different than enjoining a statute's enforcement); *cf. Loper Bright Enters. v. Raimondo*, No. 22-1219, 2024 WL 3208360, at *12 (U.S. June 28, 2024) (explaining the APA is "a check upon administrators whose zeal might otherwise" carry "them to excesses not contemplated in legislation" (quotation omitted)).

Moreover, Defendants disregard important differences between preliminary and final relief, including the purpose of preliminary relief: "to preserve the relative positions of the parties" until further judicial proceedings "can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Given that purpose and "the haste that is often necessary," parties need not "prove [their] case in full" at the preliminary-relief stage, *id.*, and district courts have "wide latitude" in determining the scope of

relief that fits the equities, *Doster v. Kendall*, 54 F.4th 398, 441 (6th Cir. 2022), *vacated as moot*, 144 S. Ct. 481 (2023). That means that "status-quo relief might look broader than the ultimate relief." *Id.* at 442.

In any event, enjoining enforcement of the entire Rule is necessary here to prevent further irreparable harm. That is because Plaintiffs challenge numerous provisions of the Rule—that are the heart of the Rule—and the provisions operate together to cause Plaintiffs' harm, including increased "costs for expanded recordkeeping requirements, expanded training requirements, and other compliance costs." ECF 53 at 36. Defendants' contrary arguments rely on blatant mischaracterizations of Plaintiffs' suit, the Rule, and *Bostock*. We address each misstep in turn.

*First*, Defendants argue the injunction is overbroad because (a) it applies beyond what they characterize as the challenged aspects of the Rule—"particular applications of §§ 106.10, 106.31(a)(2), and 106.2" in the gender-identity context—and (b) Plaintiffs' harms all stem from "the Rule's treatment of gender identity." Stay Mot. 10–14. But both premises are wrong. An accurate account of the suit and Plaintiffs' harms (substantiated by declarations and other evidence that Defendants ignore, *see* ECF 24-1–41) demonstrates that preliminary relief must

extend to the entire Rule to preserve the status quo and prevent irreparable harm.

Plaintiffs argued the Rule's expansion of "sex" to include *all* grounds other than biological sex constitutes an unlawful rewrite of Title IX and violates Spending Clause limits (among other defects). *See, e.g.*, ECF 24 at 7–9, 12–15, 19–21; ECF 11 ¶¶ 101–02; *see also* ECF 53 at 27. This dramatic expansion of obligations and liability necessarily harms Plaintiffs, especially when combined with the Rule's increased reporting, recordkeeping, and response requirements. *See, e.g.*, ECF 24-21 ¶¶ 30–32; Ex. 1 at 9–12; *cf. Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024) (explaining that "[r]ecognizing new forms of discrimination 'substantially changes the experience' for all regulated entities, in terms of how to carry out their obligations"). Although Plaintiffs focused on the gender-identity context (and additionally argued that the Rule's de minimis harm provision flouts Title IX), their arguments were not limited to that context. Indeed, Plaintiffs provided examples focused on other grounds, highlighted that sexual orientation is treated as distinct from sex in Title IX's text, and noted that discrimination based on sex stereotypes and sexual orientation does not always demand

consideration of a person's sex. *See* ECF 24 at 7–8 & n.6, 14–15; ECF 46 at 4.

Plaintiffs also challenged the Rule's sexual harassment definition across the board, arguing that it disregards Title IX's textual limitations, conflicts with the First Amendment, and would improperly increase Plaintiffs' obligations and liability despite Spending Clause limits. *See, e.g.*, ECF 24 at 16–21; ECF 46 at 4–6; ECF 11 ¶¶ 108–10; *see also* ECF 53 at 22. Plaintiffs explained how the new standard requires them to "monitor and censor speech on a myriad of topics," "particularly when combined with its expansion of 'sex' to include other concepts," and noted non-exhaustive, illustrative examples showing that the Rule would force them to police speech about gender identity, pregnancy, and sex stereotypes. *See* ECF 24 at 11 & n.11, 16–17; ECF 11 ¶ 109 n.4.

Additionally, Plaintiffs argued other provisions harm them by improperly increasing their obligations, compliance costs, and liability risks. *See, e.g.*, ECF 24 at 1; *id.* at 2, 16, 25–28; ECF 24-21 ¶¶ 23, 30–32; ECF 11 ¶¶ 112–15; *see also* ECF 53 at 12. And Plaintiffs argued the Rule is arbitrary and capricious because, among other reasons, Defendants failed to properly account for non-monetary harms (such as inducing

violations of constitutional rights) and the costs to review and understand the internally inconsistent Rule, revise policies, and undertake training requirements. ECF 24 at 25.

*Second*, Defendants gloss over the Rule's interrelated nature and the fact that the challenged provisions are the crux of the Rule—both of which make severance unworkable and improper, especially at the preliminary-relief stage. The Rule's executive summary describes the challenged provisions when explaining the "[p]urpose" of the Rule and lists them as "[m]ajor [p]rovisions." 89 Fed. Reg. at 33,476–77. Accordingly, "[w]ithout the challenged provisions, the Final Rule loses its primary purpose." *Mayor of Baltimore v. Azar*, 973 F.3d 258, 293 (4th Cir. 2020) (en banc). That creates "substantial doubt" that the Defendants would have issued the Rule without the challenged portions, notwithstanding "the severability clause." *Id.*

Furthermore, the Rule cannot "function sensibly" without "the offending portion[s]." *MD/DC/DE Broadcasters*, 236 F.3d at 22. It is not as though the challenged provisions have "no connection" to other provisions and can be severed without impacting the Rule's general operation. *Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 352 (D.C.

Cir. 2019) (concluding price adjustments to certain mail types could be severed from rate changes that applied to other categories); *see Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1004 (5th Cir. 2019) (vacating "two discrete parts of the rule"). Instead, the challenged provisions "permeate[]" the Rule, making severance both infeasible and unnecessary here. *Tennessee*, 2024 WL 3019146, at *43; *see Kansas*, 2024 WL 3273285, at *18 (similar).[4] It is not the judiciary's "role to write or rewrite regulations or rules, especially those that substantively contravene existing legislation." *Texas v. Becerra*, No. 6:24-CV-211-JDK, 2024 WL 3297147, at *12 (E.D. Tex. July 3, 2024) (quotation omitted).

*Third*, Defendants argue (at 17–18) they will likely "succeed in appealing the preliminary injunction against enforcement of § 106.10 because that provision reflects a straightforward application of *Bostock*" and "discrimination on the basis of sexual orientation and gender identity are necessarily forms of prohibited sex discrimination." This is false. Not only do Defendants misrepresent *Bostock*, but they also wrongly assume *Bostock* applies to Title IX.

---

[4] *Cf. Chamber of Commerce U.S. Dep't of Labor*, 885 F.3d 360, 388 (5th Cir. 2018) ("[T]his comprehensive regulatory package is plainly not amenable to severance.").

In reality, "*Bostock* simply held that firing a homosexual or transgender employee qualifies as sex discrimination when the firing is 'because of' the employee's 'traits or actions' that the employer would otherwise tolerate in an employee of the opposite sex." *Texas*, 2024 WL 2947022, at *38 (quoting 590 U.S. at 660–61). The employers in *Bostock* engaged in sex discrimination when they fired men because of "traits or actions" (being attracted to men or presenting as a woman) that the employer tolerates in female employees. 590 U.S. at 660–61; *see L.W. v. Skrmetti*, 83 F.4th 460, 485 (6th Cir. 2023). That does not mean that adverse treatment based on grounds other than biological sex will *always* be prohibited sex discrimination. Even Defendants seem to concede this to some extent. S*ee* 89 Fed. Reg. at 33,811 ("[N]ot all conduct one might label 'sex stereotyping' necessarily violates Title IX.").

For example, a religious student group would not be considering sex *at all* if it excluded students who are bisexual or who claim a nonbinary gender identity from membership.[5] The group would not be tolerating the

---

[5] *See* ECF 24-7 at S80 (explaining "nonbinary" refers to "people whose genders are comprised of more than one gender identity simultaneously or at different times (e.g., bigender), who do not have a gender identity or have a neutral gender identity (e.g., agender or neutrois), have gender identities that encompass or blend elements of

*same* traits—(a) being attracted to both sexes or (b) claiming a nonbinary gender identity—regardless of the excluded person's sex. Because the trait that is not "tolerated" in the hypothetical is identical for both sexes, Title IX has "nothing to say" even if *Bostock* applied. 590 U.S. at 660; *see Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 921 (5th Cir. 2023).

In any event, "*Bostock* does not apply to Title IX." ECF 53 at 19; *see, e.g.*, *L.W.*, 83 F.4th at 484 (similar). That is because: (1) the Supreme Court said so, explicitly limiting the opinion to Title VII and the specific question at issue there, 590 U.S. at 681; (2) the statutes differ "in important respects," including that Title IX allows differentiation between the sexes, *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021),[6] and (3) the employment context differs from the educational

---

other genders (e.g., polygender, demiboy, demigirl), and/or who have a gender that changes over time (e.g., genderfluid)" or can be "a gender identity in its own right").

[6] Fifth Circuit precedent is not to the contrary notwithstanding Defendants' cite (at 18) to an employment discrimination case. *See Lakoski v. James,* 66 F.3d 751, 757–58 (5th Cir. 1995) (concluding that "Title IX prohibits the same employment practices proscribed by Title VII," so employees cannot "bypass" Title VII's procedures). This Court does not automatically apply Title VII precedent to Title IX, but rather recognizes important distinctions between the two statutes—including that Title IX was passed under Congress's spending power. *See, e.g.*, *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 656–57 (5th Cir. 1997) ("[W]e should be reluctant to treat Title IX's anti-discrimination

context, *see Adams*, 57 F.4th at 808 ("[T]he school is not the workplace."); *Texas*, 2024 WL 2947022, at *32 (explaining "equal educational opportunities for men and women necessarily requires differentiation and separation at times").

Defendants therefore have failed to make a strong showing that they are likely to succeed on appeal.

## B. Defendants Will Suffer No Irreparable Harm Absent a Partial Stay.

Defendants also cannot show they will suffer any harm, much less irreparable harm absent a partial stay "during the pendency of the appeal." *Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021). Defendants' claimed injury is alleged interference with their ability to enforce Title IX to prevent discrimination. But Defendants' cited authority is about irreparable injury to a *State* when a democratically enacted *state statute* is enjoined from being implemented by a federal court. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012). That is inapposite to this situation

---

provisions in the same way that we treat Title VII's provisions."). The Supreme Court has also recognized that "Title VII is a vastly different statute" than Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 168 (2005); *see also Texas*, 2024 WL 2947022, at *37; *Soule v. Connecticut Ass'n of Sch., Inc.*, 90 F.4th 34, 63 (2d Cir. 2023) (en banc) (Menashi, J., concurring).

where federal defendants are enjoined by a federal court from implementing a unilateral, bureaucratically issued rule that subverts a federal statute and conflicts with state laws. *See Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) (alleged interference with the executive branch's implementation of a statute is "not irreparable"). Defendants have no irreparable injury from the APA working as it is intended to "check" bureaucrats that have exceeded statutory authority. *Cf. Loper Bright*, 2024 WL 3208360, at *12.

In any event, the injunction does not prevent Defendants from enforcing Title IX to prevent sex discrimination, nor does it prevent Defendants from enforcing longstanding Title IX regulations. All the injunction will do is prevent Defendants from enforcing the new, not-yet-effective Rule (in four States) that (a) has never been in effect and thus has generated no reliance interests and (b) subverts rather than effectuates Title IX. Defendants also cannot explain how they will suffer irreparable harm from delaying the Rule's effective date when Defendants *themselves* delayed the Rule's issuance multiple times. *See* ECF 24-26. If Defendants are right that delaying the Rule's effective date is irreparable harm, then Defendants have been engaged in irreparable

self-harm. This incoherence further demonstrates Defendants will suffer no irreparable harm absent a stay.

## C. Plaintiffs Will Suffer Irreparable Harm if a Partial Stay Is Granted.

In contrast, Plaintiffs will suffer increased irreparable harm if the Court grants Defendants' requested stay. Plaintiffs offered substantial evidence of irreparable harm that the Rule will cause, *see, e.g.*, ECF 24-13–25, 24-32–34, which the district court credited, ECF 53 at 37, and Defendants have not rebutted.

A partial stay would, among other things, increase Plaintiffs' irreparable harm by destroying the status quo. Plaintiffs would be compelled to expend time and resources—on an incredibly short time frame—to understand their obligations under a blue-penciled Rule, revise policies, and train employees before August 1.[7] Plaintiffs would thus incur "nonrecoverable costs of complying with a putatively invalid regulation," which "constitute[s] irreparable harm." *Rest. Law Ctr. v.*

---

[7] It would be inequitable to impose such a burden on Plaintiffs when Defendants—who have far more resources—claim they cannot even compile the administrative record until September 20 due to "resource constraints." Defs.' Opp, *Tennessee*, No. 2:24-cv-00072, ECF 116 at 7 (E.D. Ky. July 8, 2024).

*U.S. Dep't of Labor*, 66 F.4th 593, 597 (5th Cir. 2023). Furthermore, a partial stay could amplify compliance costs because, if the scope of final relief differs from the preliminary relief when this case is ultimately resolved, Plaintiffs would need to expend resources to revise policies and update training a second time.

What is more, a partial stay will cause Plaintiffs to suffer all the irreparable harm that necessitated preliminary relief in the first place. Under Defendants' proposed relief, only enforcement of "(i) 34 C.F.R. § 106.31(a)(2), and (ii) 34 C.F.R. § 106.2's definition of 'hostile environment harassment' as applied to discrimination on the basis of gender identity" would be enjoined. Stay Mot. 21. Plaintiffs would thus still have to police an enormous amount of speech, be induced to violate Free Speech, Free Exercise, Due Process, and parental rights, have greater obligations and compliance costs, and face increased investigations and complaints. *See* ECF 24 at 25–27.

Plaintiffs would also still be subject to the unlawful gender-identity mandates, along with increased investigations and complaints, based on 34 C.F.R. § 106.10 and § 106.31(a)(1). Those provisions (a) equate gender-identity discrimination with sex discrimination and (b) prohibit

sex discrimination. That means Defendants will—as demonstrated in previous guidance (that is subject to a separate suit and preliminary injunction, *see Tennessee*, 104 F.4th 577)—classify treating persons consistently with their biological sex as prohibited sex discrimination under those provisions. *See* U.S. Dep't of Justice and U.S. Dep't of Educ., *Confronting Anti-LGBTQI+ Harassment in Schools* (June 23, 2021), https://www2.ed.gov/about/offices/list/ocr/docs/ocr-factsheet-tix-202106.pdf (indicating that refusing to refer to students by whatever pronouns they choose or barring a biological male who claims to be a "transgender high school girl" from using the girls' restroom or trying out for the girls' cheerleading team is gender-identity discrimination).

Therefore, if the injunction is partially stayed, Plaintiffs will still face coercion to change state laws and school board practices and comply with the Rule or otherwise lose a significant amount of federal funding. And Plaintiff School Boards will still need to begin the expensive process of designing, modifying, and constructing bathrooms and locker rooms to comply with the Rule and lessen its harmful effects on privacy and safety. *See* ECF 24-21 ¶¶ 25–26; *see also* ECF 24-15–25. The fact a stay "will substantially injure" Plaintiffs thus also weighs against Defendants' stay

request. *Nken*, 556 U.S. at 434.

### D.    A Partial Stay Would Disserve the Public Interest.

The public interest weighs against Defendants' stay request too. Allowing Defendants to enforce portions of the unlawful and arbitrary and capricious Rule would undermine the public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Texas*, 10 F.4th at 559 (quotation omitted).

A partial stay would also hurt the public's interest in the enforcement of democratically enacted state laws, academic freedom, and constitutional rights of students, parents, and teachers. *See, e.g.*, *Keyishian v. Bd. of Regents of Univ. of State of N. Y.,* 385 U.S. 589, 603 (1967) ("The classroom is peculiarly the 'marketplace of ideas.'"); *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("[I]njunctions protecting First Amendment freedoms are always in the public interest." (quotation omitted)). And, because the requested partial stay would allow the gender-identity mandates to go into effect, the stay would also undermine the public's interest in protecting *all* children—children who do not wish to share bathrooms and locker rooms with adults and children of the opposite sex *and* children struggling with

gender-identity issues. *See* ECF 24 at 29 (discussing how "social transitioning can be harmful to a child's mental health and is a pathway to dangerous medical procedures that … 'will not be the best way to manage their gender-related distress'"); ECF 24-27–28, 24-37–41.

Finally, a partial stay would create confusion regarding what aspects of the Rule will go into effect, which will burden (a) schools and teachers trying to ascertain their obligations and (b) families deciding whether to find alternatives to public school as the new school year rapidly approaches.

## CONCLUSION

The Court should preserve the decades-long status quo and deny Defendants' motion.

Dated:   July 10, 2024                    Respectfully submitted,

                                          ELIZABETH B. MURRILL
                                          Attorney General of Louisiana

                                          */s/Autumn Hamit Patterson*
                                          J. BENJAMIN AGUIÑAGA
                                          Solicitor General
                                          AUTUMN HAMIT PATTERSON
                                          Special Assistant Solicitor General

                                          OFFICE OF THE ATTORNEY GENERAL
                                          1885 N. 3rd St.
                                          Baton Rouge, LA 70802
                                          (225) 506-3746

                                          *Counsel for Plaintiff State of Louisiana, Plaintiff Louisiana Department of Education, and Plaintiff School Boards*

LYNN FITCH
Attorney General of Mississippi

SCOTT G. STEWART
Solicitor General
JUSTIN L. MATHENY
Deputy Solicitor General
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
P.O. Box 220
Jackson, Mississippi 39205
(601) 359-3680

*Counsel for Plaintiff State of Mississippi*

RAÚL LABRADOR
Attorney General of Idaho

ALAN HURST
Solicitor General
JOSH TURNER
Chief of Constitutional
Litigation and Policy
OFFICE OF THE ATTORNEY
GENERAL OF IDAHO
700 W. Jefferson Street, Suite 201
P.O. Box 83720
Boise, Idaho 83720
(208) 334-2400

*Counsel for Plaintiff State of Idaho*

AUSTIN KNUDSEN
Attorney General of Montana

CHRISTIAN B. CORRIGAN
Solicitor General
PETER TORSTENSEN
Deputy Solicitor General
MONTANA DEPARTMENT OF JUSTICE
215 N. Sanders Street
Helena, Montana 59601
(406) 444-2707

*Counsel for Plaintiff State of Montana*

DONALD A. DAUGHERTY, JR.
Senior Counsel, Litigation
PAUL ZIMMERMAN
Senior Counsel, Policy and
Regulation
MARTHA A. ASTOR
Counsel, Litigation
DEFENSE OF FREEDOM INSTITUTE
FOR POLICY STUDIES
1455 Pennsylvania Avenue, NW,
Suite 400 Washington, DC 20004
(414) 559-6902

*Counsel for Plaintiff States*

## CERTIFICATE OF SERVICE

I certify that on July 10, 2024, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

/s/ *Autumn Hamit Patterson*
AUTUMN HAMIT PATTERSON

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,196 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

/s/ Autumn Hamit Patterson
AUTUMN HAMIT PATTERSON

Dated: July 10, 2024