No. 24-30399

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

STATE OF LOUISIANA, et al.,

Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF EDUCATION, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Louisiana

**REPLY IN SUPORT OF EMERGENCY MOTION
FOR A PARTIAL STAY PENDING APPEAL**

*Of Counsel:*

LISA BROWN
   *General Counsel*
   *U.S. Department of Education*

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
   *General*

MELISSA N. PATTERSON
STEPHANIE R. MARCUS
JACK STARCHER
STEVEN A. MYERS
DAVID L. PETERS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7515*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

# CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required under Fifth Circuit Rule 28.2.1 as appellants are all governmental parties.

*s/Jack Starcher*
Jack Starcher

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY ........................................................................... 1

ARGUMENT ..................................................................................................................... 2

I. The preliminary injunction is overbroad. ................................................................. 2

    A. There is no basis to enjoin provisions of the Rule that were not challenged and cause plaintiffs no harm. ................................................. 2

    B. Plaintiffs misstate the effect of the challenged provisions. ........................ 6

        1. Plaintiffs articulate no harms stemming from § 106.10's basic prohibition on gender-identity discrimination. ........................ 6

        2. The district court's concerns regarding hostile-environment harassment under § 106.2 do not support a blanket injunction of that provision. .................................................................. 8

    C. Defendants' scope arguments were not "forfeited," nor is the motion procedurally improper. .................................................................. 9

II. The remaining factors favor a partial stay. ............................................................ 10

CONCLUSION ............................................................................................................... 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

## INTRODUCTION AND SUMMARY

The district court granted a preliminary injunction based on asserted harms related to the Rule's application to sex-differentiated restrooms, locker rooms, and pronouns with respect to transgender individuals. Even taking those purported harms at face value, the district court's sweeping preliminary injunction of the entire Rule was an abuse of discretion because it significantly exceeds what is necessary to address those harms, is not tailored to the aspects of the Rule that the court found likely unlawful, and disregards "the text of a severability clause" without anything akin to "extraordinary circumstances." *National Ass'n of Mfrs. v. U.S. SEC*, -- F. 4th --, 2024 WL 3175755, at *9 (5th Cir. June 26, 2024) (alteration and quotation marks omitted). Defendants therefore sought narrow relief, asking this Court to stay the injunction pending appeal only insofar as it sweeps more broadly than necessary, including to the extent it enjoins provisions that plaintiffs never challenged. *See* Mot. for Partial Stay (Mot.). Nothing in the opposition memoranda filed by the State plaintiffs or Rapides Parish School Board (together, plaintiffs) undermines defendants' entitlement to that modest relief. *See generally* States' Opp'n; RPSB's Opp'n. On the contrary, plaintiffs' continued focus on sex-differentiated spaces and language reinforces the propriety of a limited stay.

# ARGUMENT

## I. The preliminary injunction is overbroad.

### A. There is no basis to enjoin provisions of the Rule that were not challenged and cause plaintiffs no harm.

Plaintiffs and the district court focused below on the application of a handful of the Rule's provisions to bathrooms, locker rooms, and pronouns. *See generally* Mot. 6-9. Yet the Rule effects many changes to Title IX's regulations that have nothing to do with those issues, Mot. 4, and plaintiffs identify no cognizable harm caused by these provisions. The district court erred in enjoining these unchallenged provisions.

1. Plaintiffs have no response to the fundamental disconnect between the defects identified by the district court and the injunction it issued. Plaintiff States acknowledge that they "focused on the gender identity" issues below, States' Opp'n 14, but claim that they object to more than just the Rule's gender-identity provisions, States' Opp'n 13-16. The district court's order, however, was premised on issues of gender identity discrimination. *See* Dkt. No. 53, at 19-34. The district court did not find that the unchallenged provisions of the Rule were likely unlawful, nor did it find that those provisions would independently cause plaintiffs any cognizable harm. It was an abuse of the district court's equitable authority to enjoin more than was "necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

Plaintiffs claim that the district court's injunction did not need to adhere to normal limitations on courts' authority because it preserves the "status quo." States' Opp'n 11-13; RPSB's Opp'n 9-10. That kind of argument "misconceives the central purpose of a preliminary injunction, which is to prevent irreparable harm." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975) (per curiam); *see City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). "Maintenance of the status quo is only a sometimes concomitant of preventing irreparable harm" and is "never the touchstone for such injunctive relief." *Parks*, 517 F.2d at 787. There is no principle providing that courts may disregard "precision" and abandon any attempt to match the preliminary relief to the harms asserted, RPSB's Opp'n 9. Nor is there any authority providing that the Court should skip a severability analysis simply because some parties might find it easier to implement a broader injunction than a tailored one, *contra* States' Opp'n 16-17; RPSB's Opp'n 18-19, 21-22.

Plaintiffs' arguments that severability analysis was not required at this stage, States' Opp'n 16-17; RPSB's Opp'n 9-10, are similarly misplaced. The district court was required to tailor its injunction "to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018); *ODonnell v. Harris County*, 892 F.3d 147, 155, 163 (5th Cir. 2018) (injunction "must be vacated" if "not narrowly tailored to remedy the specific action which gives rise to the order") (quotation marks omitted), *overruled on other grounds by Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023) (en banc). The court did not do so, and that was error.

To the extent plaintiffs suggest broader relief was appropriate under 5 U.S.C. § 705, RPSB's Opp'n 9-10, that is wrong for at least two reasons. First, the district court did not issue a § 705 stay or even cite that provision. *See* Dkt. No. 53, at 39-40. More fundamentally, § 705 provides that courts may delay an action's effective date only "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705; *see* H.R. Rep. No. 79-1980, at 43 (1946) (this relief "is equitable"). As the Supreme Court recently explained, "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024). Those principles required the district court to issue a narrower injunction.

2. Plaintiffs alternatively claim that the district court's injunction is justified because no provision of the Rule is severable. States' Opp'n 16-17; RPSB's Opp'n 10-13. But plaintiffs are wrong that the Rule cannot function without the handful of challenged provisions. There is no reason why schools cannot do things like provide lactation spaces, keep records about sex discrimination, provide fair grievance procedures for sex-discrimination claims, or publish notices of nondiscrimination without applying those requirements to the narrow subset of issues concerning bathrooms, locker rooms, and pronouns upon which plaintiffs focus. *See* States' Opp'n 11; RPSB's Opp'n 13, 21-22. Plaintiffs would suffer no harm, nor would the Court be deprived of the ability to meaningfully review the challenged aspects of the Rule, if the unchallenged provisions took effect.

4

Plaintiffs' arguments are also contrary to the Rule's express severability provisions. Plaintiffs' approach to severability, under which a court would disregard an agency's severability determination in favor of its own judgment regarding the value of a rule after certain portions are held unlawful, is inconsistent with governing law. *See* States' Opp'n 16-17; RPSB's Opp'n 10-13. Instead, when a rule provision is deemed invalid, the remainder may go into effect "unless there is 'substantial doubt' that the *agency* would have left the balance of the rule intact." *Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 136 (D.C. Cir. 2022) (emphasis added). As this Court recently reaffirmed in applying a functionally identical severability clause, district courts "'should adhere to the text of a severability clause' in the absence of extraordinary circumstances,'" *Nat'l Ass'n of Mfrs. v. SEC*, -- F. 4th --, 2024 WL 3175755, at *9 (5th Cir. June 26, 2024) (*NAM*) (quoting *Barr v. American Ass'n of Political Consultants*, 591 U.S. 610, 624 (2020) (plurality opinion)), because such a clause "dispels any doubt about what the [agency] would have done if the" invalid provisions "were subtracted," *id.* at *10.

It is plaintiffs' position—not defendants'—that would require courts to "rewrite regulations [and] rules," States' Opp'n 17, by disregarding agencies' severability judgments. The severability provisions remove any doubt that the unchallenged provisions should go into effect here. Mot. 12-13, 16. Faced with an agency's conclusion that portions of a regulation can operate independently from invalidated provisions, this Court looked to whether the *challengers* have "shown that

5

the [remaining] portions … cannot function sensibly," *NAM*, 2024 WL 315755, at*10, a showing that plaintiffs have not made.

*Ohio v. EPA*, 603 U.S. --, 2024 WL 3187768 (U.S. June 27, 2024), provides no support for plaintiffs' unprecedented approach to severability. There, the Court stayed the challenged provisions of a rule that injured the challengers because it concluded that the agency had likely failed to adequately explain those provisions. *Id.* at *8. Under *Ohio*, a court thus may grant relief as to provisions that it concludes are likely invalid and that injure the challengers; it does not support disregarding an agency's express severability determination by extending relief to *valid* provisions that cause the plaintiffs no harm.

**B.     Plaintiffs misstate the effect of the challenged provisions.**

Even as to the challenged provisions, the injunction is overbroad insofar as it enjoins provisions—and potential applications thereof—that do not cause the irreparable harms on which the district court relied.

**1.     Plaintiffs articulate no harms stemming from § 106.10's basic prohibition on gender-identity discrimination.**

Plaintiffs' quarrel with § 106.10 rests upon a fundamental mischaracterization of what that provision does. This provision simply recognizes that discrimination on the basis of gender identity is a form of sex discrimination under Title IX. Just as under Title VII an employer cannot fire or discriminate against an employee for being gay or transgender, under Title IX a school cannot expel or otherwise discriminate

6

against a student for being gay or transgender. But § 106.10 does not "address bathrooms, locker rooms," or other sex-differentiated contexts. *Bostock*, 590 U.S. at 681. Instead, a separate provision of the Rule, § 106.31(a)(2), specifically addresses those contexts, stating that recipients may not carry out otherwise permissible sex separation in a manner that causes an individual more than de minimis harm. Indeed, plaintiffs appear to concede that *Bostock* declared "gender-identity discrimination … a form of sex discrimination" *without* addressing whether "all sex distinctions are a form of gender-identity discrimination," RPSB's Opp'n 16—and as defendants detailed, § 106.10 has precisely the same effect. Thus, RPSB is wrong that "the Government never explains how schools can comply with § 106.10 if it goes into effect but § 106.31(a)(2) does not." RPSB's Opp'n 22. In that scenario, the Department of Education could not find a school in violation of its regulations for barring a transgender girl from the women's restroom, but it could if the school barred her from the cafeteria.

The rule set forth in § 106.10 straightforwardly applies *Bostock*'s textual analysis to the materially similar text of Title IX. *See* Mot. 17-18. But even apart from defendants' likelihood of success on that issue, the Court should grant defendants' motion because plaintiffs have not established that they will suffer irreparable harm if prohibited from engaging in conduct that all parties agree would be discrimination against students simply for being gay or transgender. Indeed, while plaintiffs express concern about bathrooms, locker rooms, and pronouns, no plaintiff expresses any

7

desire to, *e.g.*, bar gay students from student government or put transgender students in detention.

It is no response that defendants opined, prior to the Rule's issuance, that Title IX requires recipients to afford transgender individuals access to restrooms and locker rooms consistent with their gender identity. *See* RPSB's Opp'n 15-16. This case challenges the Rule, and § 106.31(a)(2) is the only Rule provision that addresses which bathroom transgender students must be able to access. Accordingly, the requested stay—under which § 106.31(a)(2) would remain enjoined pending appeal—would prohibit the Rule from being applied to require that transgender students be permitted to access bathrooms or locker rooms consistent with their gender identity. There is no justification for enjoining a separate provision that plaintiffs do not wish to violate and that causes them no harm.

### 2. The district court's concerns regarding hostile-environment harassment under § 106.2 do not support a blanket injunction of that provision.

The injunction is also overbroad with respect to § 106.2. That provision defines many terms, but plaintiffs challenge only its definition of hostile-environment harassment. Moreover, plaintiffs are incorrect to suggest that the district court found that definition vague as a general matter, RPSB Opp'n 18-19; its analysis focused on that definition's application to matters regarding gender identity and did not address plaintiffs' general vagueness arguments. *See* Dkt. No. 53, at 22-23 (standard would "chill[] and punish[] protected speech" by "compel[ling] staff and students to use

8

whatever pronouns a person demands"). There is a profound "mismatch between" the harms the district court perceived "and the breadth of the injunction." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 364 (6th Cir. 2022). That is particularly so given the Department's clarity that "applications" of provisions are as severable as individual provisions, *see* Mot. 19, and the straightforward option of enjoining the definition of hostile-environment harassment as applied to discrimination on the basis of gender identity.

### C. Defendants' scope arguments were not "forfeited," nor is the motion procedurally improper.

Plaintiffs' contention that defendants forfeited their severability arguments, States' Opp'n 8-9, RPSB's Opp'n 19-20, is wrong. Defendants' district court brief was perfectly clear: it cited the Rule's severability discussion, explained that plaintiffs "challenged only certain portions of the Rule," and cited precedent for the proposition that "if the Court grants preliminary relief as to any of those portions, the remainder of the Rule should be permitted to go into effect, as intended." Dkt. No. 38, at 38-40. That is a far cry from *Texas v. U.S. EPA*, 829 F.3d 405, 435 (5th Cir. 2016), where the agency made only a "passing" request that "any stay be 'narrowly tailored.'" Without knowing which provisions and applications the Court would find unlawful, the government could not have prepared a detailed severability analysis of an opinion that had not yet issued. That does not mean that it waived its argument that the Court needed to narrowly tailor any equitable relief it issued.

9

Nor is this motion "[p]rocedurally [i]mproper." States' Opp'n 8. Defendants sought a stay in district court on June 24 and informed the court that—given the impending August 1 effective date—defendants would "seek relief in the Court of Appeals should the [district court] fail to grant" relief by July 1. Dkt. No. 59-1, at 7. Having explained when and why defendants would move in this Court, nothing in the Federal Rules compelled defendants to further delay their motion. *See* Fed. R. App. P. 8(a)(1)-(2) (party must "ordinarily move first in the district court" and inform the court of appeals "the district court denied the motion *or* failed to afford the relief requested" (emphasis added)).

## II. The remaining factors favor a partial stay.

The remaining factors tilt decisively in favor of the proposed stay. That stay would restore provisions that plaintiffs have not challenged or that prohibit conduct in which plaintiffs do not assert they intend to engage—including prohibitions on things like forcing a student to sit in the back of a classroom because he is gay, excluding a student from the lunchroom because he is transgender, sexually harassing a cisgender woman in a manner that meets the regulatory definition of hostile-environment harassment, or requiring a new mother to express breastmilk in a bathroom stall.

While plaintiffs allege they will incur costs to come into compliance with the Rule, States' Opp'n 23-24, RPSB's Opp'n 21-22, those alleged costs flow from provisions and applications that either have not been held unlawful or that would

remain enjoined under the requested stay. *See Haaland v. Brackeen*, 599 U.S. 255, 296 (2023) (no standing based on costs of record-keeping and notice requirements; "Texas would continue to incur the complained-of costs even if it were relieved of the duty" it challenged). Even if those costs were relevant, they would pale in comparison to the government's interest in stamping out sex discrimination. *Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008).

## CONCLUSION

The preliminary injunction should be stayed to the extent it extends beyond the following 2024 Rule provisions: (i) 34 C.F.R. § 106.31(a)(2), and (ii) 34 C.F.R. § 106.2's definition of "hostile environment harassment" as applied to discrimination on the basis of gender identity. The Department respectfully requests a decision by July 12.

Respectfully submitted,

*Of Counsel:*

LISA BROWN
  *General Counsel*
  *U.S. Department of Education*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MELISSA N. PATTERSON
STEPHANIE R. MARCUS
 s/ Jack Starcher
JACK STARCHER
STEVEN A. MYERS
DAVID L. PETERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

July 2024

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,599 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/Jack Starcher*
Jack Starcher

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Jack Starcher*
Jack Starcher