# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

State of Louisiana, by and through its Attorney General, Elizabeth B. Murrill; Louisiana Department of Education; State of Mississippi, by and through its Attorney General, Lynn Fitch; State of Montana, by and through its Attorney General, Austin Knudsen; State of Idaho, by and through its Attorney General, Raul Labrador; School Board of Webster Parish; School Board of Red River Parish; School Board of Bossier Parish; School Board Sabine Parish; School Board of Grant Parish; School Board of West Carroll Parish; School Board of Caddo Parish; School Board of Natchitoches Parish; School Board of Caldwell Parish; School Board of Allen Parish; School Board LaSalle Parish; School Board Jefferson Davis Parish; School Board of Ouachita Parish; School Board of Franklin Parish; School Board of Acadia Parish; School Board of Desoto Parish; School Board of St. Tammany Parish; All Plaintiffs.,

*Plaintiffs-Appellees*,

v.

United States Department of Education, Miguel Cardona, in his official capacity as Secretary of Education; Office for Civil Rights, United States Department of Education; Catherine Lhamon, in her official capacity as the Assistant Secretary for Civil Rights; United States Department of Justice; Merrick B. Garland, in his official capacity as the Attorney General of the United States; Kristen Clarke, in her official capacity as Assistant Attorney General for the Civil Rights Division of United States Department of Justice,

*Defendants-Appellants*.

———————————

School Board Rapides Parish,

*Plaintiff-Appellee*,

v.

United States Department of Education, United States Department of Education; Miguel Cardona, in his official capacity as Secretary of Education; Catherine Lhamon, in her official capacity as the Assistant Secretary for Civil Rights; United States Department of Justice; Merrick B. Garland, in his official capacity as the Attorney General of the United States; Kristen Clarke, in her official capacity as Assistant Attorney General for the Civil Rights Division of United States Department of Justice,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Louisiana, Monroe
Honorable Terry A. Doughty, Chief Judge
Civil Action Nos. 3:24-cv-00563-TAD-KDM, 1:24-cv-00567

---

**BRIEF OF *AMICI CURIAE* FIRST AMENDMENT SCHOLARS
IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL**

---

Jessica Ring Amunson
   *Counsel of Record*
Sierra Paskins
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that *amici curiae* are unaware of any persons with any interest in the outcome of this litigation other than *amici curiae* represented in this brief and their counsel (listed below), and those identified in the party and *amicus* briefs filed, or to be filed, in this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Counsel for *Amici Curiae*
Jessica Ring Amunson, Jenner & Block LLP
Sierra Paskins, Jenner & Block LLP

*Amici Curiae*
Floyd Abrams, Yale Law School, Abrams Institute for Freedom of Expression Founder

Vincent Blasi, Columbia Law School, Corliss Lamont Professor Emeritus of Civil Liberties

Lee Bollinger, Columbia Law School, President Emeritus and Seth Low Professor of the University

Erwin Chemerinsky, University of California Berkeley Law School, Dean & Jesse H. Choper Distinguished Professor of Law

Genevieve Lakier, University of Chicago Law School, Herbert and Marjorie Fried Teaching Scholar

Amanda Shanor, The Wharton School of the University of Pennsylvania, Assistant Professor of Legal Studies & Business Ethics and Wolpow Family Faculty Scholar

Geoffrey Stone, University of Chicago Law School, Edward H. Levi Distinguished Service Professor of Law

Laura Weinrib, Harvard Law School, Fred N. Fishman Professor of Constitutional Law

/s/ Jessica Ring Amunson
Counsel of Record for *Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF AUTHORITIES .................................................................iv

IDENTITY AND STATEMENT OF INTEREST OF *AMICI CURIAE* .................1

SUMMARY OF ARGUMENT ..............................................................1

ARGUMENT ...................................................................................2

I.      The Anti-Discrimination Standard Used In The Final Rule Has Long Been Treated As Regulating Conduct Or Merely Incidentally Regulating Speech For Constitutional Purposes .............................................2

        A.      The "severe or pervasive" standard is an established standard that has repeatedly been upheld without raising First Amendment concerns ...................................................................................2

        B.      Anti-discrimination and anti-harassment laws promote rather than violate the First Amendment's values ..........................................6

II.     Under Any Applicable Constitutional Standard, The Final Rule Raises No First Amendment Concern. ...................................................7

III.    Prohibiting Discrimination And Harassment In Schools Does Not Compel Speech Just Because Some Do Not Want to Oblige .......................11

CONCLUSION .................................................................................12

ADDENDUM....................................................................................14

# TABLE OF AUTHORITIES

CASES

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ....................................9

*Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954) ...............7

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)....................4

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999) ..............................................................................5

*Equity in Athletics, Inc. v. Department of Education*, 639 F.3d 91 (4th Cir. 2011) ......................................................................................11

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) .............................4

*Hamilton v. Alabama*, 376 U.S. 650 (1964).......................................9, 12

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)..............................3, 4

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995) ............................................................................6

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998) ..........9

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ..................................................................................10, 12

*Sypniewski v. Warren Hills Regional Board of Education*, 307 F.3d 243 (3d Cir. 2002) ...................................................................................9

*Texas v. Johnson*, 491 U.S. 397 (1989)....................................................8

*United States v. O'Brien*, 391 U.S. 367 (1968).......................................10

*Zeno v. Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012) ...........................................................................................4-5

STATUTES

42 U.S.C. § 12132 .......................................................................................8

29 U.S.C. § 701 *et seq.* ...............................................................................8

iv

**FEDERAL REGULATIONS**

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33474 (Apr. 29, 2024) ........................................................................ 2, 5, 11, 12

Racial Incidents and Harassment Against Students at Educational Institutions; Investigative Guidance, 59 Fed. Reg. 11448 (Mar. 10, 1994) ........................................................................................................ 4

Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 66 Fed. Reg. 5512-01 (Jan. 19, 2001) ................................................................................ 5

Office for Civil Rights; Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034 (Mar. 13, 1997) .......................................................... 5

**OTHER AUTHORITIES**

Amanda Shanor & Sarah E. Light, *Anti-Woke Capitalism, The First Amendment, and the Decline of Libertarianism*, 118 Nw. U. L. Rev. 347 (2023) ........................................................................................... 6, 7

Frederick Schauer, *The Boundaries of the First Amendment: A Preliminary Exploration of Constitutional Salience*, 117 Harv. L. Rev. 1765 (2004) ................................................................................... 6

Richard H. Fallon, Jr., *Sexual Harassment, Content, Neutrality, and the First Amendment Dog that Didn't Bark*, 1994 Sup. Ct. Rev. 1 ......................... 44

Reply Brief, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) (No. 92-1168), 1993 WL 632335 .................................................................. 4

Response Brief, *Harris v. Forklift Systems, Inc*, 510 U.S. 17 (1993) (No. 92-1168), 1993 WL 302223 ................................................................ 4

United States Department of Education, *Questions and Answers on Title IX and Sexual Violence* (Apr. 29, 2014) (Rescinded), https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf ..................................................................................................... 5

# IDENTITY AND STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

*Amici* are scholars of the First Amendment who have taught courses in, published articles and books on, and dedicated significant attention to the study of the topic. *Amici curiae* have an interest in promoting the sound interpretation of the First Amendment in a way that does not dilute the protections for freedom of speech, and that is in harmony with its purpose, precedent, and the societal values that are served by the protection of free expression. *Amici*'s names and professional affiliations are set forth in the Addendum attached to this brief.

## SUMMARY OF ARGUMENT

Government prohibitions against discrimination and harassment have long existed in harmony with the First Amendment. Indeed, such prohibitions promote rather than inhibit the values of participatory autonomy that the First Amendment protects. Recognizing that the very same government protections against severe or pervasive discrimination and harassment that have been successfully applied in myriad contexts for decades also apply to transgender people does not change the constitutional analysis under the First Amendment, and the district court was wrong to hold that it did.

---

[1] All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part and no person—other than the *amici* and their counsel—contributed money that was intended to fund preparing or submitting this brief.

Equally misguided was the district court's holding on compelled speech. Prohibitions against discrimination and harassment target conduct, not speech. But even assuming the prohibitions have incidental effects on speech, the government's interest in ensuring all individuals can participate in and benefit from educational programs or activities is sufficiently important to justify any such effects.

## ARGUMENT

### I. The Anti-Discrimination Standard Used In The Final Rule Has Long Been Treated As Regulating Conduct Or Merely Incidentally Regulating Speech For Constitutional Purposes.

The Final Rule's "severe or pervasive" standard for sex-based harassment and hostility aligns with the definition used by the Equal Employment Opportunity Commission under Title VII and the Department of Education under Title VI. *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33474, 33503 (Apr. 29, 2024) ("Final Rule"). Courts have never interpreted this standard to violate the First Amendment, and there is no reason that extending this standard to cover transgender people under Title IX should trigger First Amendment concerns.

### A. The "severe or pervasive" standard is an established standard that has repeatedly been upheld without raising First Amendment concerns.

The district court said that it could not "overlook" the different "implications" between the Final Rule's anti-discrimination standard and Title VII's anti-discrimination standard, because "[w]hile Title VII is vastly important . . ., the Court

2

cannot simply apply the same standard to federally funded educational institutions."
ROA.2370. But for decades, agencies and courts have defined an unlawful hostile environment as one in which discrimination or harassment is "severe or pervasive" without raising any First Amendment concerns. The Final Rule does not change that standard.

In the employment context, Title VII of the Civil Rights Act has long protected employees against a hostile work environment. More than three decades ago, when an employee sued her employer alleging that the employer had created a sexually hostile work environment by subjecting her to numerous offensive remarks and unwanted sexual innuendos, a unanimous Supreme Court held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently *severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (emphasis added) (citation and internal quotation marks omitted). Justice Scalia concurred, saying that he knew "of no test more faithful to the inherently vague statutory language than the one the Court today adopts." *Id.* at 25 (Scalia, J., concurring).

In that same case, the parties argued over whether the First Amendment was violated by the application of Title VII to allegations that "speech"—in the form of offensive remarks and unwanted sexual innuendos—could create a hostile work

environment. *Compare* Resp. Br. at *31-33, *Harris*, 510 U.S. 17 (1993) (No. 92-1168), 1993 WL 302223, *with* Reply Br. at *10-11, *Harris*, 510 U.S. 17 (1993) (No. 92-1168), 1993 WL 632335. Without any reference to those concerns, the Supreme Court unanimously agreed that when harassment is "sufficiently severe or pervasive" to create a hostile work environment, it is unlawful under Title VII. *Harris*, 510 U.S. at 21; *see also* Richard H. Fallon, Jr., *Sexual Harassment, Content, Neutrality, and the First Amendment Dog that Didn't Bark*, 1994 Sup. Ct. Rev. 1, 9-10. Since that time, the Court has repeatedly applied that same standard without questioning its constitutionality. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752-54, 757 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 786-88 (1998).

In the context of prohibiting racial discrimination pursuant to Title VI of the Civil Rights Act, the same standard applies. Again, more than thirty years ago, the Department of Education promulgated a "severe, pervasive" standard for racial discrimination in schools to protect every student's ability to participate in or benefit from an educational program or activity. Racial Incidents and Harassment Against Students at Educational Institutions; Investigative Guidance, 59 Fed. Reg. 11448, 11449 (Mar. 10, 1994). Without raising any First Amendment concerns, courts repeatedly have relied on that standard to recognize schools' "longstanding legal duty" to eliminate harassment under the anti-discrimination laws. *See, e.g.*, *Zeno v.*

*Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 670 n.14 (2d Cir. 2012) (holding that student suffered from severe, pervasive, and objectively offensive racial harassment when his peers made frequent pejorative references to his skin tone and repeatedly called him racial epithets). Nor is this anti-discrimination standard novel even in the Title IX context to prohibit sexual harassment in schools. The Department of Education stated in its 1997 guidance—memorializing its "longstanding … policy and practice"—that "sexual harassment must be sufficiently *severe,* persistent, *or pervasive* that it adversely affects a student's education or creates a hostile or abusive educational environment." Office for Civil Rights; Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034, 12034-35, 12045 (Mar. 13, 1997) (emphasis added).[2]

---

[2] In *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court limited recovery in private lawsuits seeking money damages to sexual harassment that is "so severe, pervasive, *and* objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.* at 633 (emphasis added). *Davis* did not alter the standard applicable to administrative enforcement by the Department of Education, let alone establish it as a constitutional standard. And for two decades after *Davis* was decided, the Department continued to apply the "severe *or* pervasive" standard. *Compare* Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 66 Fed. Reg. 5512-01 (Jan. 19, 2001), *with* U.S. Dep't of Educ., *Questions and Answers on Title IX and Sexual Violence* (Apr. 29, 2014) (Rescinded), https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf. In 2020, the Department briefly adopted the *Davis* standard, but the Final Rule restores the Department's longstanding interpretation for enforcement. 89 Fed. Reg. at 33500.

**B.** **Anti-discrimination and anti-harassment laws promote rather than violate the First Amendment's values.**

Anti-discrimination protections stem from a "venerable history" and "are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination, and they do not, as a general matter, violate the First . . . Amendment[]." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 571-72 (1995). Just as "[s]ecurities violations, antitrust violations, criminal solicitation, and many other categories of 'speech' remain uncovered by the First Amendment," so, too, is severe or pervasive harassment. Frederick Schauer, *The Boundaries of the First Amendment: A Preliminary Exploration of Constitutional Salience*, 117 Harv. L. Rev. 1765, 1771 (2004). To read the First Amendment to bar anti-discrimination measures here would extend the reach of the Constitution where the Supreme Court has not. After all, "[i]f a generally applicable law regulates conduct *regardless* of what it communicates, even if the law incidentally restricts or compels expression, the Court typically extends only a relaxed form of scrutiny or even no First Amendment coverage at all." Amanda Shanor & Sarah E. Light, *Anti-Woke Capitalism, The First Amendment, and the Decline of Libertarianism*, 118 Nw. U. L. Rev. 347, 405 (2023).

Indeed, anti-discrimination protections, such as the Final Rule, should not be read as limited by, but instead as *furthering* the First Amendment's values. That is because the principles that undergird the First Amendment protect "decisional and

participatory" autonomy, especially when the speech at issue is not a common "medium of expression in public discourse." *Id.* at 420-22. Teachers and students alike expect that they should be treated in a manner free from discrimination and harassment in the classroom. Protections against harassment ensure that all individuals can benefit from their educational experiences, which is "the very foundation of good citizenship." *Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 493 (1954).

## II. Under Any Applicable Constitutional Standard, The Final Rule Raises No First Amendment Concern.

Because the Final Rule targets the conduct of limiting other students' opportunity to learn, it either regulates non-expressive conduct, regulates speech incidental to that conduct, or regulates speech but is so narrowly tailored to achieve a compelling purpose that even strict scrutiny would not bar it.

Not all speech that expresses an idea is covered by the First Amendment. One cannot raise a plausible First Amendment claim against being compelled to speak in court, express a view in contractual obligations, or file taxes, for example. Similarly, it has likewise long been of little moment that hate speech is strongly protected in the public sphere, while the same utterances are prohibited in other contexts by Titles

VI, VII, and IX, as well as Title II of the Americans with Disabilities Act[3] and Section 504 of the Rehabilitation Act.[4]

Publicly expressing that one is opposed to sexual-orientation diversity or gender-based anti-discrimination policies, such as in an op-ed in the school newspaper, is fully protected—and could not constitutionally be banned because "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989) (collecting cases). That includes expressing the belief that there are only two genders, that transwomen or transmen are not "real" men or women, or that the appropriate place for women is in the home. However, the government *can* prohibit an individual from acting on such beliefs to prevent another from accessing education, for example by consistently and intentionally addressing a classmate or student with epithets. Here, the Final Rule does not prohibit anyone from publicly expressing their beliefs, except in limited contexts where the expression of one's beliefs actually limits students' opportunity to learn.

It is true that the Rule clarifies that this long-established anti-discrimination standard applies equally to conduct directed at transgender people on the basis of their sex. But the recognition that anti-discrimination rights apply to additional

---

[3] 42 U.S.C. § 12132.
[4] 29 U.S.C. § 701 *et seq.*

8

groups, even when it causes discomfort or objections that are deeply held, does not alter the relationship between the anti-discrimination laws and the First Amendment. There is nothing about harassing a transgender person in an educational environment that is inherently *less* obstructive to a classmate's ability to learn than other forms of speech that may descend to abuse. *Cf. Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 264, 268-69 (3d Cir. 2002) (holding that application of a school's racial harassment policy against several white students wearing black face and waving confederate flags to threaten other black students was appropriate as those actions created a "well-founded fear of disruption"); *303 Creative LLC v. Elenis*, 600 U.S. 570, 591 (2023).

The Final Rule simply prohibits an individual from engaging in the conduct of intentional and consistent discrimination against an individual's sex-based identity in an educational setting, which, like other anti-discrimination laws, is fully consistent with the First Amendment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78-82 (1998) (extending Title VII protection against discrimination to victims of same-sex harassment without mentioning the First Amendment). And the Supreme Court has already recognized that certain forms of offensive address can implicate core equality guarantees, overriding any speech interest in refusing to refer to someone with the honorifics they prefer. *See Hamilton v. Alabama*, 376 U.S. 650, 650 (1964) (reversing without expressing any

constitutionally relevant concern for affected speech or association because there was simply no right to discriminate by refusing to use preferred form of address).[5]

Even if the Final Rule could be read as regulating speech, its effect is incidental. Regulation of conduct that incidentally limits speech occurs in a variety of other circumstances that are not unconstitutional, like a prohibition on "White Applicants Only" signs is incidental to a law prohibiting hiring on the basis of race. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006) ("*FAIR*"). That is because when regulation is unrelated to the suppression of expression, it satisfies the First Amendment if it furthers "a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 67 (citation and internal quotation marks omitted). Indeed, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

Here, there is such an interest, and the Final Rule is appropriately tailored to achieve it. The Final Rule, like its Title VI and VII counterparts, contains a standard

---

[5] First Amendment protection does not depend on whether the speech touches on a constitutionally suspect characteristic such as race or sex, and it would threaten free speech if it did.

that only prohibits unwelcome sex-based conduct that is so "severe or pervasive" that it actually prevents an individual from equally participating in an educational program or activity.[6] *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 101-03 (4th Cir. 2011) (reasoning that equal participation in educational settings is a relevant consideration of Title IX's application).

## III. Prohibiting Discrimination And Harassment In Schools Does Not Compel Speech Just Because Some Do Not Want To Oblige.

The district court held that the Final Rule likely compels speech "because it would compel staff and students to use whatever pronouns a person demands, even when those are contrary to grammar rules, reality, or political ideologies, and it further prohibits staff and students from expressing their own views on certain topics." ROA.2369. In the district court's view, the Final Rule "allows for one political ideology to dominate the educational landscape while either silencing the other or calling the other 'harassment' under these standards." ROA.2369. Not so.

The foregoing analysis applies regardless of whether the Rule is characterized as incidentally restricting or compelling speech (or silence).[7] A requirement to file

---

[6] Whether speech does have that effect will, by necessity, depend on the context. But, as the Department of Education recognized, the expression must have "an impact far greater than being bothersome or merely offensive." *See* 89 Fed. Reg. at 33494-95; *see also id.* at 33516.

[7] To the extent that religious objections exist against the Final Rule's anti-discrimination standard, that disagreement must be raised, if at all, in a Free Exercise Clause claim, not a Free Speech claim.

a tax return or respond to a discovery request is no less constitutional because it incidentally *requires* rather than *restricts* speech. This is why the Court in *FAIR* analyzed the requirement that schools send emails and post notices advertising military recruiters—which the schools argued unconstitutionally compelled speech—as identical to a requirement that an employer "take down a sign reading 'White Applicants Only.'" 547 U.S. at 62. Either result, the Court explained, "hardly means that the law should be analyzed as one regulating the [challenger]'s speech rather than conduct." *Id*.

As in *FAIR*, the Final Rule "does not dictate the content of the speech at all, which is only 'compelled' if, and to the extent," *id*., a speaker decides to address students in certain ways, *cf. Hamilton*, 376 U.S. at 650. To the extent the Final Rule compels speech at all, it does so incidental to its ban on conduct that prevents an individual from equally accessing education. In so doing, the Final Rule is appropriately tailored to advance the Department's "'compelling interest in eradicating discrimination' on the basis of sex." 89 Fed. Reg. at 33503 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623-24 (1984)). The Final Rule should be upheld.

## CONCLUSION

*Amici* urge the Court to vacate the district court's preliminary injunction.

Date: September 4, 2024

Respectfully submitted,

*/s/ Jessica Ring Amunson*

Jessica Ring Amunson
   *Counsel of Record*
Sierra Paskins
JENNER & BLOCK LLC
1099 New York Avenue NW
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com

**ADDENDUM**

*Amici curiae* are as follows:

Floyd Abrams, Yale Law School, Abrams Institute for Freedom of Expression Founder

Vincent Blasi, Columbia Law School, Corliss Lamont Professor Emeritus of Civil Liberties

Lee Bollinger, Columbia Law School, President Emeritus and Seth Low Professor of the University

Erwin Chemerinsky, University of California Berkeley Law School, Dean & Jesse H. Choper Distinguished Professor of Law

Genevieve Lakier, University of Chicago Law School, Herbert and Marjorie Fried Teaching Scholar

Amanda Shanor, The Wharton School of the University of Pennsylvania, Assistant Professor of Legal Studies & Business Ethics and Wolpow Family Faculty Scholar

Geoffrey Stone, University of Chicago Law School, Edward H. Levi Distinguished Service Professor of Law

Laura Weinrib, Harvard Law School, Fred N. Fishman Professor of Constitutional Law

**CERTIFICATE OF SERVICE**

I certify that on the 4th of September 2024 I electronically filed the **Brief of Amici Curiae First Amendment Scholars in Support of Defendants-Appellants and Reversal** with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Jessica Ring Amunson*
Jessica Ring Amunson

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), Fed. R. App. P. 29(a)(5), and Cir. R. 29.3 because this document contains 2,828 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14 point, Times New Roman.

*/s/ Jessica Ring Amunson*
Jessica Ring Amunson